May Term,
1856.
—————
QUICK
v.
SPRINGFIELD
TOWNSHIP.

————◦•◦•◦————

## QUICK and Others *v.* SPRINGFIELD TOWNSHIP.

The school law of 1855 is not in contravention of the constitution.

It was competent for the people, in the exercise of sovereign power, in providing by the constitution for a general system of common schools, so to discriminate between that portion of the people who were already provided with a school fund and that portion who were not, as to place them upon an equality.

The eighth article of the constitution requires that such discrimination shall be made.

The school law does not conflict with the act of congress granting the sixteenth section in the several congressional townships in this state to the inhabitants of such townships respectively for the use of schools.

*Monday, June 16.*

APPEAL from the *Franklin* Circuit Court.

GOOKINS, J.—*Springfield Township*, in *Franklin* county, being also a congressional township, upon complaint against *Quick*, the auditor, and *Robeson*, the treasurer of said county, obtained an injunction to prevent said auditor and treasurer from distributing the common school funds in said county, as required by the act of *March* 5, 1855. From the order making said injunction perpetual, they appeal to this Court.

The complaint shows that said township has a considerable fund, derived from the sixteenth section therein, and the plaintiff claims that the annual income arising from that fund shall not be taken into account, as said act requires, in making distribution of the revenues of the state derived from other trust funds and from taxation.

The ground upon which this claim is made, is, that the act in question is unconstitutional, and also that it violates the act of congress making the grant.

The eighth article of the constitution is as follows:

" SEC. 1. Knowledge and learning, generally diffused throughout a community, being essential to the preservation of a free government; it shall be the duty of the general assembly to encourage, by all suitable means, moral, intellectual, scientific, and agricultural improvement; and to provide, by law, for a general and uniform system of common schools, wherein tuition shall be without charge, and equally open to all.

" SEC. 2. The common school fund shall consist of the congressional township fund, and the lands belonging thereto;

" The surplus revenue fund;

" The saline fund and the lands belonging thereto;

" The bank tax fund, and the fund arising from the one hundred and fourteenth section of the charter of the state bank of *Indiana;*

" The fund to be derived from the sale of county seminaries, and the moneys and property heretofore held for such seminaries; from the fines assessed for breaches of the penal laws of the state; and from all forfeitures which may accrue;

" All lands and other estate which shall escheat to the state for want of heirs or kindred entitled to the inheritance;

" All lands that have been, or may hereafter be, granted to the state, where no special purpose is expressed in the grant, and the proceeds of the sales thereof; including the proceeds of the sales of the swamp lands, granted to the state of *Indiana* by the act of congress of the 28th of *September*, 1850, after deducting the expense of selecting and draining the same;

" Taxes on the property of corporations, that may be assessed by the general assembly for common school purposes.

" SEC. 3. The principal of the common school fund shall

remain a perpetual fund, which may be increased, but shall never be diminished; and the income thereof shall be inviolably appropriated to the support of common schools, and to no other purpose whatever.

"Sec. 4. The general assembly shall invest, in some safe and profitable manner, all such portions of the common school fund as have not heretofore been intrusted to the several counties; and shall make provision, by law, for the distribution, among the several counties, of the interest thereof.

"Sec. 5. If any county shall fail to demand its proportion of such interest, for common school purposes, the same shall be re-invested for the benefit of such county.

"Sec. 6. The several counties shall be held liable for the preservation of so much of the said fund as may be intrusted to them, and for the payment of the annual interest thereon.

"Sec. 7. All trust funds, held by the state, shall remain inviolate, and be faithfully and exclusively applied to the purposes for which the trust was created.

"Sec. 8. The general assembly shall provide for the election, by the voters of the state, of a state superintendent of public instruction, who shall hold his office for two years, and whose duties and compensation shall be prescribed by law."

The following are the two sections of the act referred to, which prescribe the mode of distributing the funds:

"Sec. 97. The state superintendent shall annually, by the fourth *Monday* in *April* in each year, make out a statement showing the number of scholars in each county of the state, the amount of the income of the common school fund in each county for distribution, and the amount of taxes collected for school purposes, and shall apportion the same to the several counties of the state, according to the enumeration of scholars therein, without taking into consideration the congressional township fund in such distribution."

"Sec. 101. The treasurer of the several counties shall annually, on the third *Monday* of *May*, make distribution

of the income of the common school fund to which his county is entitled, (upon the warrant of the county auditor), to the several townships, and incorporated cities and towns of the county, which payment shall be made to the treasurer of each township, and in making the said distribution, the auditor shall ascertain the amount of the congressional township fund belonging to each city, town, and township, and shall so apportion the income of the common school fund, as to equalize the amount of available funds in each city, town, and township, as near as may be, according to the number of scholars therein: Provided, however, that in no case shall the congressional township fund," &c., "be diminished by such distribution and diverted to any other township." Acts of 1855, p. 175.

We are at a loss to see upon what ground it can be insisted that the act in question violates any provision of the constitution. That that instrument makes the common school fund to consist in part of the congressional township fund and the lands belonging thereto, is too plain for argument. Language could not be more explicit. The only question that can arise at this point, is, is this part of the constitution valid?

It has been several times decided by this Court that the sixteenth section belongs to the inhabitants of the congressional township in which it is situated. *The State* v. *Newton*, 5 Blackf. 455.— *The State* v. *Springfield Township*, 6 Ind. R. 83. And in the case last referred to, it was held, that the act of 1852, which sought to take that fund from the township, and to consolidate it with the other funds of the state, was void. To these decisions we adhere; but the question yet remains, had the people of the state, while seeking by a constitution to devise a system which should convey the means of instruction equally to every child in the state, the power, by virtue of her sovereignty, so to discriminate between those already provided with a fund, and those who had no such provision, as to place them upon an equality? In other words, had she any power to take notice or cognizance of the congressional township fund in any manner whatever? We think she had such power,

and that by the eighth article of the constitution she exercised it, by declaring that the congressional township fund should constitute a part of the common school fund; and that, by the first section of that article, she expressly, and in terms, enjoined it upon the general assembly to provide by law that the system, with that fund included, should be made uniform; which injunction could not have been obeyed, without making the discrimination here provided for.

The argument for the appellee, is, that the act of 1855 does, indirectly, what that of 1852 attempted to do directly; that it, in effect, takes away from the congressional townships their sixteenth section fund, and this is complained of as injustice. The argument likens it to the case of discriminating between the wealthy and the poor in bestowing the favors of the state for the purposes of education, by withholding from the wealthy and industrious, and conferring upon the poor and indolent. We do not perceive either the logic of this argument, or its conflict with the constitution, if well put, so far as the act professes to go. There is certainly a material difference between taking away what one has, and the refusal to give him more. So far as the constitution affects the question, the power to discriminate exists, unless it is prohibited, and the prohibition is neither pointed out, nor have we been able to find it in that instrument. It does not conflict with the 23d section of the 4th article, which requires all laws to be of uniform operation throughout the state; for the act is not only uniform in itself, but it produces uniformity in the subjects upon which it operates. The example which the appellee has chosen, forcibly illustrates the position assumed; but to our minds the operation of the law seems much like that provision of the law of descents which distributes nothing to the heir who has received an advancement, until the others are made equal,—a provision highly favored by the Courts on account of its obvious justice. It is to be remembered that it was not the townships which paid the price of these lands, but the state, by exempting the lands of the general government from taxation for five years after their sale. Still, they are invested with the

title, and the act does not propose to divest it; but it proposes to distribute to the other children of the state, until the advancements are made equal.

What has been said disposes of the other point. The act does not conflict with the act of congress making the grant, nor in any manner attempt to interfere with it.

STUART, J., dissented.

*Per Curiam.*—The judgment is reversed with costs. Cause remanded, with instructions to the Circuit Court to dismiss the suit.

*J. Morrison*, for the appellants.
*G. Holland* and *J. D. Howland*, for the appellee.