DAVIS ET AL. *v.* THE STATE, EX REL. BOARD OF COMMISSIONERS OF BARTHOLOMEW COUNTY.

SCHOOLS.—*Distribution of School Funds.*—It is the policy of the school law that all school funds are to be distributed to the beneficiaries thereof through and

Davis *et al. v.* The State, *ex rel.* Board of Commissioners of Bartholomew Co.

from the county treasury to the proper officers of the various school corporations, cities, towns, and civil townships.

SAME.—*Money from Rent of School Lands.*—Money derived from the rent of unsold school lands belonging to the sixteenth section is to be paid into the county treasury, to insure its just and equitable distribution to the inhabitants of the congressional township in which such section lies.

SAME.—*Liability of County for School Fund.*—A county is liable for rents derived from unsold school lands belonging to the sixteenth section, and such fund should be paid into the county treasury and be distributed by the county auditor; and a township trustee has nothing to do with its distribution, except to so much of it as may be apportioned to such parts of his township as are within the congressional township.

SAME.—*Action against Township Trustee.*—An action may be sustained in the name of the State on the relation of the board of county commissioners, to recover rents received by a township trustee for the lease of unsold school lands belonging to the sixteenth section, and not paid by such trustee into the county treasury.

OFFICIAL BOND.—*Liability of Officer and Sureties.*—The statute creates a permanent and continuing liability against an officer and the sureties on his official bond, for a failure to perform any duty imposed by any law in force at the time the bond is executed, or which may be subsequently passed during the time for which such officer has been elected; and it is not necessary that the bond should provide in express terms for such permanent and continuing liability.

SCHOOLS.—*Statute Construed.*—The amended forty-fourth section of the school law, approved March 7th, 1873, imposes upon township trustees the duty of reporting to the county auditor annually by the fourth Monday of March, in accordance with the requirements of said section, and of paying into the county treasury all the moneys in their hands derived from rent of unsold school lands belonging to the sixteenth section.

SAME.—*Damages in Suit upon Bond of Trustee.*—It is the imperative duty of a court rendering judgment against a township trustee, in a suit upon his official bond, for a violation of a duty in reference to school revenues, to assess ten per cent. damages on the amount recovered.

From the Bartholomew Circuit Court.

*R. Hill, G. W. Richardson, W. W. Herod,* and *F. Winter,* for appellants.

*S. Stansifer* and *F. T. Hord,* for appellee.

BUSKIRK, J.—This was an action by appellee against appellants on the official bond of Joel S. Davis, as trustee of Sandcreek township; the other appellants being sureties of Davis.

The complaint is by the State for the use of the Board of Commissioners of Bartholomew county, and, after setting forth the election and qualification of Davis, alleges that school section of land No. 16, belonging to the congressional township fund, lies within the civil township of Sandcreek, and the control and rental, etc., thereof has for twenty years past been with the trustee of said civil township; that before and on the fourth Monday of March, 1873, said trustee had in his hands as rents and income of said section, received by him as trustee, and interest received, to wit, $12,000, which, on or before or since the fourth Monday in March, he failed and fails to report to the auditor of said county, and pay into the county treasury, but wrongfully holds and retains the same. Therefore plaintiff demands judgment for twelve thousand dollars, with ten per cent. damages thereon, without relief from valuation, appraisement, or stay laws, and other proper relief. A copy of the bond and oath of Davis was filed with the complaint.

Separate motions were made by the principal, Davis, and his sureties, to strike out that portion of the complaint which alleged that Davis had failed to pay into the county treasury money which he had on hand on or before March 4th, 1873.

These motions were severally overruled, and exception taken.

Separate demurrers were then filed to the complaint by Davis and his sureties, which were severally overruled, and exception taken.

Answer was then filed in five paragraphs :

1. General denial.

2. That before the taking effect of the act of March 7th, 1873, to amend section 44 of the school law, and before the commencement of this action, to wit, March 4th, 1873, defendant Davis, principal, made and filed with the auditor of said county his report to the county commissioners, for the year ending February 28th, 1873, for the school and other funds of said township, in accordance with the law then in force, which was accepted and approved by the

board of commissioners. A copy of the report was filed with the answer.

3. Like the second, except that it simply avers that the report was accepted and approved without alleging by whom.

4. Admitting that at the commencement of this action Davis had in his hands as trustee seven thousand four hundred and eighty dollars and five cents, proceeds of school section, and that during his incumbency of said office he received other sums, amounting to, to wit, five thousand dollars, but that before the commencement of this action or the taking effect of the act of March 7th, 1873, amendatory of section 44 of the school law, he had expended all said moneys except said seven thousand four hundred and eighty dollars and five cents, in support of the common schools of Sandcreek township, which includes a large portion of the congressional township to which said 16th section belongs, for tuition therein; and that he now holds and retains said seven thousand four hundred and eighty dollars and five cents, as said trustee, for the support of the common schools of said township, and for no other purpose.

5. Partial, as to so much of complaint as avers failure of Davis to pay over moneys in his hands arising from said section, admits that he has paid over none of it; that he has as proceeds thereof seven thousand four hundred and eighty dollars and five cents, and has during his incumbency of office received, to wit, five thousand dollars in addition thereto; but that before the commencement of this action, and before the taking effect of the act of March 7th, 1873, amendatory of section 44 of the school law, he had expended all of said moneys in excess of said seven thousand four hundred and eighty dollars and five cents, in support of common schools in Sandcreek township, which includes said 16th section and a large portion, to wit, all but about four sections, of the congressional township to which said section belongs, for tuition therein, and holds and retains said seven thousand four hundred and eighty dollars and five cents as such trustee for future support of common schools in said

township in payment of tuition therein, and for no other purpose.

Plaintiff demurred to each paragraph except the first, for insufficient facts, and the demurrers were all sustained, and exception taken.

Submission to court for trial, and finding for plaintiff, assessing damages for money received at seven thousand eight hundred and eighteen dollars and eighty cents, and ten per cent. damages thereon; total, eight thousand two hundred and seventy dollars and sixty-eight cents.

Motion for new trial overruled and exception. Judgment upon the finding.

The case made by the complaint is this: The appellant Joel S. Davis was township trustee of Sandcreek township, in which is situate, unsold, school section 16. It is averred that as such trustee he collected some twelve thousand dollars rents of said section, and which sum, on or before or since the 4th Monday in March, 1873, he failed and fails to report to the auditor of said county, and pay into the treasury of said county, but wrongfully withholds the same.

Numerous propositions are presented for the consideration of the court, but we think that they are all embraced in the following:

1. The amended 44th section is unconstitutional and void, for the reason that no provision is made to get the fund out of the treasury when once paid in.

2. Township trustees not only collect the rents of a school section that may happen to be within the limits of their civil township, but they control and distribute the fund to such portions of their civil township as may be within the congressional township, and not within an incorporated town or city, independent of any of the checks and safeguards thrown around other portions of the school fund.

3. The board of county commissioners is not the proper party relator.

4. The action was prematurely instituted.

5. The sureties are not bound by the provisions of the amended 44th section.

6. Said trustee reported under the 44th section before amended, and the passage of the amendment did not have the effect to require payment into the treasury until his next annual report.

7. The Superintendent of Public Instruction is the proper party relator.

Section 44 of the school law of March 6th, 1865, was as follows:

"Sec. 44. The custody and care of all lands belonging to the congressional township fund shall be with the trustee of the civil township in which the same shall be situated, who shall report annually to the auditor by the fourth Monday in March, the annual income derived therefrom, to the township."   3 Ind. Stat. 453.

The 44th section as amended by the act of March, 1873, is as follows:

" The custody and care of all lands belonging to the congressional township fund, shall be with the trustee of the civil township in which the same shall be situated, who shall report annually to the auditor, by the fourth Monday in March, the annual income derived therefrom to the township, and such report shall embrace a fully itemized statement of his rent account of such lands, to whom and for what amount the same was rented to each tenant, and whether the rents have been collected or not, and if any portion has not been collected, he should state fully the reasons why the same has not been collected, and any trustee who has heretofore failed and neglected to so report, shall embrace in his first report such itemized statement, and showing for each preceding year not so reported, whether by himself or his predecessor; and the amount of school funds for any year to which such township might otherwise be entitled, shall be withheld and not paid over to such trustee, if the rental value of said lands for such term shall equal or exceed the township's otherwise portion of the school fund, and it shall be the duty of

such trustee to pay into the county treasury all rents collected and reported by him as aforesaid." Acts 1873, pp. 79, 80.

The primary and most important question in the case is, whether the legislature possessed the power to require a township trustee to pay into the county treasury all moneys received for the rent of unsold lands belonging to the sixteenth section.

The following extracts from the briefs of counsel will show the positions assumed. Counsel for appellants, in discussing the action of the court in overruling the motion to strike out of the complaint that portion which alleged that Davis, the trustee, had failed to pay into the county treasury money which he had on hand on or before March 4th, 1873, say:

"This motion was designed to, and, we think, does present the most important question in the case, viz., whether the legislature has power to so intermeddle with the fund arising from the congressional grant of the 16th section as to require the township trustee having the custody of that fund to pay it into the county treasury without providing some means of getting it out of the treasury and applying it to the beneficiaries of the grant, thus virtually locking it up forever.

"It was said by this court, in *Shoemaker* v. *The Board, etc.,* 36 Ind. 184: 'When the money is once paid into the treasury of the county it must remain there until it is paid out in the manner prescribed by law.' If, then, the law makes no provision for its being paid out, it must remain there forever.

"By an examination of the act amendatory of section 44 of the school law of 1865 (Acts 1873, p. 79, 80), it will be seen that by the last clause of the first section of the act it is provided that 'it shall be the duty of such trustee to pay into the county treasury all rents collected and reported by him as aforesaid.' By the preceding provisions of the section his report is to embrace 'a fully itemized statement of his rent account.' Thus every dollar which he receives from

the congressional sixteenth section is to go directly into the treasury. He cannot expend a farthing for the support of schools while in his hands, but his imperative duty is to collect and pay into the county treasury. Now, for the sake of the argument, we may concede the power of the legislature to designate the county treasurer as the custodian of this fund during such time as it is lying idle awaiting the occasion for its use in the manner designed by Congress in the creation of the fund, provided they prescribe some means whereby, when needed for that purpose, it can be withdrawn from his custody and applied to its legitimate purpose. But, unless some such provision is made, the perpetual locking up of the funds arising from this source is no less a conversion of the fund than if it were appropriated and used in some other way than that designed by Congress in the creation of the fund ; for instance, in mixing it with other school funds of the State and distributing it among the children of the State at large, which it was long since held by this court the legislature had no power to do. *The State* v. *Springfield Township,* 6 Ind. 83."

Counsel for appellees, on this point, say :

"We agree with counsel on the other side that any legislation attempting to deprive any of the inhabitants of a congressional township of the rents of its school section, or the interest on the proceeds of sale thereof would be unconstitutional. A congressional township is a very different thing from a civil township. They may or may not be co-extensive with each other in point of territory. The legislature has simply provided that county commissioners are required to conform the boundary of their civil townships to those of congressional townships as nearly as practicable. 3 Ind. Stat. 468, sec. 148. The facts are recognized in the school law and provided for, that a school section may be within the limits of more than one civil township, and even in two counties.

"The point made by counsel for appellants is, that the amended 44th section is unconstitutional, because it does

not provide for getting the money out of the county treasury, and the effect will be to deprive the inhabitants of the congressional township of this fund.

" We start out with the presumption that the school law is constitutional in all its parts ; that it does not seek to deprive a single inhabitant of a congressional township of his portion of the income of his section of school land, whether it be interest on the land sold or rent of the land unsold. And we agree with counsel on the other side, that the principle involved is the same, whether the land be sold or unsold ; that in the one case the proceeds of the land is the principal, and in the other case the land itself is the principal of the fund.

" Under our construction of the school law, every inhabitant of a congressional township will receive his portion of this fund, whether the land is sold or unsold. Whilst under appellants' interpretation of the law, as is admitted by counsel on the other side to be the fact in this case, where the territories of the civil and congressional townships are not co-extensive, the inhabitants of the congressional township outside of the civil township, as well as inhabitants within the civil township, but of an incorporated city or town, will all be deprived of this fund in cases where this land is unsold. As in this case, to illustrate, the territory of the congressional township is within six different school coporations. Under appellants' theory of the law, should the sixteenth section be located in the corner of a civil township and no portion of the territory of the congressional township be in the civil township except the school section, then the inhabitants of that section would get all this fund. And if there were no inhabitants of this section entitled to it, then the trustee would hold it all forever, for as appellants would have the law to be, the trustee can only be required to pay the rents to the inhabitants of his school corporation who are within this congressional township. So that it is clear that the law as construed by appellants is unconstitutional.

" We go further and say that there is no provision in the law, anywhere, that authorizes a township trustee to distribute the rents and income of a school section within his civil township, to even the inhabitants of the congressional township who are within his school corporation, until the amount to be distributed by him is ascertained and fixed, and paid to him for that purpose out of the county treasury."

It will be observed that counsel for appellants do not deny the power of the State to manage and control the sixteenth section dedicated by Congress to the inhabitants of the township in which it lies for the support of schools therein, or the fund derived from the sale or the rent thereof. The title to the sixteenth section is not in the State, but it holds the lands and the fund derived therefrom in trust for the inhabitants of the township. It was said by this court in *The State* v. *Springfield Township*, 6 Ind. 83, that " the supervision exercised by the legislature over the township fund is but an implied necessity sanctioned by Congress. It extends only to protecting and administering, not diverting, the fund."

On the other hand, it is broadly and expressly admitted by counsel for appellee, that the fund belongs solely and exclusively to the inhabitants of the township in which such section of land lies, and that the legislature possess no power to divert such fund to any other purpose than the use of schools in such township, or to withhold such fund from the use aforesaid. It is well settled by repeated decisions of this court and of the Supreme Court of the United States, that the reservation of the school sections undoubtedly dedicated them to the uses for which they were reserved; and they cannot be appropriated by the State to any other purpose. *The State* v. *Springfield Township, supra; Quick* v. *White Water Township*, 7 Ind. 570; *Quick* v. *Springfield Township*, 7 Ind. 636; *The State* v. *The Trustees of the Vincennes University*, 2 Ind. 293, and same case, 14 How. 268, and the authorities cited.

It is virtually conceded by counsel for appellants that the

legislature possessed the power to designate the county treasurer as the custodian of this fund during such time as it is lying idle awaiting the occasion for its use in the manner prescribed by Congress in the creation of the fund, but it is earnestly insisted that the legislature has provided no means whereby, when needed for that purpose, it can be withdrawn from his custody and applied to its legitimate purpose; and that the perpetual locking up of such funds is no less a conversion of the fund than if it were appropriated and used in some other way and for some other purpose than that designated by Congress in the creation of the fund.

It therefore becomes necessary to institute an examination into the school law of the State, to ascertain whether any provision has been made for withdrawing from the county treasury money which may be paid in under the act of March 7th, 1873.

By section 3 of article 8 of our state constitution, it is provided that the common school fund shall, among other things, consist of the congressional township fund and the land belonging thereto.

By section 6, it is declared that the several counties of the State shall be held liable for the preservation of so much of the common school fund as may be intrusted to them, and for the payment of the annual interest thereon.

By sections 4 and 5 of the school law (3 Ind. Stat. 441, 442), it is provided that each civil township, incorporated city or town in the State shall be a distinct municipal corporation for school purposes, and that trustees of civil townships and school trustees elected by cities and towns shall be school trustees for their respective corporations.

Section 1 of the school law provides for the levy of a general tax for the purpose of supporting a general system of common schools.

Section 2, among other things, provides that " the fund derived from the sale of congressional township school lands, and the unsold congressional township school land at the reasonable value thereof, shall be denominated the 'Congressional

Township School Fund,' and shall never be diminished in amount, the income of which, together with the taxes mentioned and specified in the first section of this act, the money and income derived from licenses for the sale of intoxicating liquors, and unclaimed fees, as provided by law, shall be denominated the School Revenue for Tuition; the whole of which is hereby appropriated and shall be applied exclusively to furnishing tuition to the common schools of the State, without any deduction for the expense of collection or disbursement."

Section 3 reads as follows: "The several counties of this State shall be held liable for the preservation of so much of said fund as is intrusted or may have been intrusted to them, and for the payment of the annual interest thereon at the rate established by law, the payment of which interest shall be full and complete every year, and shall so appear in the auditor's report to the Superintendent of Public Instruction; and the said superintendent shall, at any time when he discovers from the report, or otherwise, that there is a deficit in the amount collected for want of prompt collection, or otherwise, direct the attention of the board of county commissioners and the county auditor to the fact, and said board of commissioners are hereby authorized and required to provide for such deficit in their respective counties."

Section 7 provides that school trustees of every township, incorporated city or town, shall receive the special school revenue belonging thereto and the revenue for tuition which may be apportioned to his township or city by the State for tuition or the common schools, and shall pay out the same for the purpose for which such revenues were collected and appropriated. Such trustees shall keep accurate accounts of the receipt and expenditures of such revenues and shall render to the county commissioners, at, etc., which report shall clearly and separately state:

1. The amount of special school revenue and revenue for

tuition on hand at the commencement of the year then ending.

2. The amount of each kind of revenue received within the year, giving the amount of tuition revenue received at each semi-annual apportionment thereof.

3. The amount of each kind of revenue paid out and expended during the year.

4. The amount of each kind of revenue on hand at the date of the report, to be carried to the new account, and shall with said report present and file a detailed account current of the receipts and payments for the year, and support the same by proper vouchers.   *   *   And when said county commissioners are satisfied that it is full, accurate, just and true, they shall allow the same, which shall have the effect to credit the trustee with the expenditures.   A copy of said report as passed and allowed by the county commissioners, shall within ten days after its date be filed with the school examiner of the county, and upon failure of the trustee to discharge any of the duties required of him relative to schools and school revenues, the board of county commissioners shall cause suit to be instituted on his official bond, and in case of a recovery against him, the court rendering the judgment shall assess upon the amount thereof ten per cent. to be included in the judgment.

Section 18 provides that trustees shall report to and file with the county examiner a copy of his list and enumeration of children entitled to school funds in his school corporation.

Section 19 provides that when a congressional township is located in two or more counties, the proper trustee for each portion thereof in the several counties shall report the same as provided in section eighteen, to the school examiner of the county in which the congressional township fund is held in trust and managed.

It is provided by section 21, that trustees of townships, cities, and towns, shall at the time of making their reports to the county school examiner, furnish him with

certain statistical information, such as "the balance of tuition revenue on hand at the commencement of the current year," the "amount received during the year from the county treasurer," "the number of acres of unsold congressional school lands, the value thereof, and the income therefrom."

Section 22 provides that in case of failure to make the statistical report to the school examiner, or the enumeration of scholars, or the report of finances required by the seventh section, the school examiner shall notify the county auditor thereof, who shall diminish the apportionment of such township, town or city, so failing, by the sum of twenty-five dollars, "and withhold from the delinquent trustee the warrant for the money apportioned to his township, town, or city, until such delinquent report is duly made." It is further provided in the same section that for "said twenty-five dollars, and any additional damages which the township, town or city, may sustain, by reason of stopping said money, said trustee shall be liable on his bond, for which the county commissioners may sue."

Section 44, before amended, provided that the custody and care of all lands belonging to the congressional township fund shall be with the trustee of the civil township in which the same shall be situated, who shall report annually to the auditor by the fourth Monday in March of each year, the annual income received therefrom.

By the 45th section it is provided that such trustees, when directed to do so by a vote of a majority of the voters of the congressional township to which the land belongs, shall lease the lands for any term not exceeding seven years, etc.

Section 46 makes provision for cases where the sixteenth section may be divided by a county or civil township line.

Section 47 provides that the proper trustees shall have all the rights of landlords, in their official name, in securing fulfilments of contracts relating to such lands, and

preventing waste or damage, or for the recovery of the same when committed.

It is provided by section 69 of the school law, that the purchase-money, interest, costs, and all damages received for the sale of the sixteenth section shall be paid to the treasurer of the proper county, and his receipt therefor filed by the person paying with the county auditor, who shall issue his quietus therefor.

Sections 74 and 75 provide for the loaning of the money so paid into the county treasury.

Section 103 provides for annual reports to be made by county auditors and treasurers to their boards of county commissioners, " relative to the school fund held in trust by said counties, distinguishing in said reports between the congressional township and common school funds, indicating the amount thereof, the additions to them within the current year then ending, the sources from whence such additions are derived, * * * giving also the amount of interest collected upon said funds," etc.

Section 104 provides that said reports shall be examined, etc., by the board of county commissioners.

Section 105 provides that the county commissioners shall make out a report for their respective counties, showing, amongst other things, " 3. The number of acres of unsold congressional township school lands, and the approximate value thereof." " And in said report the commissioners shall distinguish between the congressional township fund and the common school fund, and in their account of the interest or revenues derived from said fund, they shall observe the same distinction.

Section 109 provides that two apportionments of the school revenue for tuition shall be made each year by the State Superintendent of Public Instruction.

By section 110 it is provided, that "to enable the superintendent to make said apportionments, and ascertain the amount of said revenue collected and ready for that purpose, the auditors of the several counties of the State shall promptly,

after making the settlements with the county treasurer of their respective counties, in April, for the amount on tax list, and in October for the amount of delinquent tax collected, make report to said superintendent of the precise amount of school revenue for tuition collected in their respective counties and ready for apportionment and distribution, which report shall," etc. ·

Section 111 provides among other things, that said reports shall contain:

"5. The income derived from congressional township school fund, including the interest on loans of said fund and on deferred payments for school lands which have been sold, and the rents and profits derived from leasing or renting of any such lands, or otherwise.

"6. The amount of said income from the congressional township school fund on hand for distribution in parts of the township in the adjacent counties, specifying the amount on hand for each of the several counties."

Section 116 provides that the Auditor of State, when he makes his semi-annual settlement with county treasurers, shall give them each a warrant on the state treasury for the distributive share of said revenue apportioned to their respective counties, the amount of which shall be retained by said treasurers out of the money or revenue in their hands, and the balance ascertained to be due to the State, of ordinary state revenue or other revenue, together with said warrant, shall be paid into the state treasury, and the settlement between the respective county treasurers and the Auditor of State, and the drawing of the warrant for the amount apportioned to their respective counties, the ascertainment of the balance payable into the state treasury, and the payment of the balance, and the retention by the county treasurer of his distributive share of school revenue, according to said apportionment, shall be concurrent acts, and shall be done and performed in such manner as to effect a complete semi-annual disbursement from the state treasury, to the several counties of the State of all school revenues then apportioned

to them, etc. So that in his settlement with the Auditor of State the fund in question is treated and regarded as being in the hands of the county treasurer, and he is charged with the same, as being in his hands. Having traced the fund into the county treasury, we now proceed to show how it is apportioned and paid to the several school corporations of the county.

Section 118 provides that the auditor of each county shall, on, etc., make apportionment of the school revenue to which his county may be entitled to the several townships, towns, and cities of his county, which apportionment shall be paid to the school treasurer of each township and incorporated city or town, by the county treasurer; and in making the apportionment and distribution thereof, the auditor shall ascertain the amount of the congressional township school revenue belonging to each city, town and township, and shall so apportion the other school revenue for tuition to each city, town and township, as near as may be, according to the enumeration of the children therein: Provided, however, that in no case shall the income of the congressional township fund, belonging to any congressional township, or part of such township, be diminished by such apportionment, or diverted or distributed to any other township, and report the amount apportioned, to the state Superintendent of Public Instruction, verified by affidavit.

It seems to us from the foregoing provisions of the school law, and from others which we have not deemed it necessary to set out, that the policy of the law is, that all school funds are to be distributed to the beneficiaries thereof, through and from the county treasury to the proper officers of the various school corporations, cities, towns, and civil townships. This is necessary to preserve the proper checks and guards upon all officers from the state superintendent down to the lowest officer charged with the receiving, loaning, and paying out of any of the school funds. The payment of the money derived from the rent of the unsold school lands belonging to the sixteenth section into the county treasury is also

required to insure the just and equitable distribution of the same to all the inhabitants of the congressional township in which such section lies. When any part of such section has been sold, the money derived therefrom is paid into the county treasury and loaned out, and the interest derived therefrom is distributed in a just and equitable manner to all the inhabitants of such congressional township, although they may reside in a school corporation not co-terminous with the congressional township. But as the law stood before the act of March 7th, 1873, it very often happened that inhabitants of the congressional township were deprived of all benefit from the money received for the rent of the unsold school lands. This is admitted by counsel for appellants in their brief, where they say:

"But it may be urged that it may often happen, as it does in the case at bar, that the civil township by which the trustee is elected, and whose officer he is, is not co-terminous with the congressional township in which the sixteenth section lies, and hence portions of the congressional township entitled to the benefit of this fund will not receive it, and fractions of other townships not entitled to it will enjoy it. We concede the full force of the argument when applied to a proper case. We admit that if any action were properly brought, where the claim of those portions of the congressional township to which this 16th section belongs, which lie outside of Sandcreek township, to participate in the benefits of the fund derived therefrom could be properly presented, any court would be compelled to hold that the legislature had no power to divert the fund in this way from the beneficiaries entitled to it, more than it would have to give it to the children of the State at large. It would seem to be a legal axiom, that if the legislature could not take this fund from all the inhabitants of the township, it could not take it from any, and that if it could not give the benefit of it to all the children of the State, it could not give it to any. But, all this does not help the plaintiff's case. The legislation now under discussion does not propose to remedy, but to

aggravate, this evil. Under the legislation, as it stood before the act of March 7th, 1873, all the children living on that portion of the congressional township to which this section belongs, which lies in Sandcreek township, were receiving the benefit of this fund. They may have received more than their share, or other portions of Sandcreek township not belonging to the same congressional township may, by getting what they were not entitled to, have reduced the amount actually received below what it should have been. But, at all events, they were getting some benefit from this fund. But, by the act of March 7th, 1873, the legislature does not propose in any single respect to change this, but to lay the strong hand of the State upon the whole fund, lock it up in the county treasury, and as it cannot use it itself, to prohibit any one else from doing so. All this will undoubtedly suggest to the court the propriety, if not the absolute necessity, of further legislation before the benefit of this congressional grant can be fully received by those entitled to it, and no others; but this necessity requires the exercise of a power which this court does not possess, and its existence cannot help the court in a decision of this case."

It was manifestly the purpose of the legislature to remedy the injustice and inequality which the learned counsel for appellants admit existed. It seems plain and obvious to us that the legislature possessed the same power to require the rents derived from the unsold school lands to be paid into the county treasury, as it did to require the money received for the sale of such lands to be paid into the county treasury, the interest of which is paid out upon the warrant of the county auditor by the county treasurer to the persons entitled to receive the same. By the second section of the school law, it is provided that "the fund derived from the sale of congressional township school lands, and the unsold congressional township school land at the reasonable value thereof, shall be denominated the ' Congressional Township School Fund,' and shall never be diminished in amount, the income

of which, together with the taxes mentioned and specified in the first section of this act, the money and income derived from licenses for the sale of intoxicating liquors, and unclaimed fees, as provided by law, shall be denominated the School Revenue for Tuition ; the whole of which is hereby appropriated and shall be applied exclusively to furnishing tuition to the common schools of the State, without any deduction for the expense of collection or disbursement."

The rents received for the unsold school lands are made a part of the " school revenue for tuition," and when paid into the county treasury under the amended 44th section, it will be paid out with the other school funds, constituting the "school revenue for tuition," under and in pursuance of sections 116 and 118.

We have duly considered the arguments of counsel for appellants, and examined the sections of the school law referred to by them, and have compared such sections with the residue of such law, but we have been unable to reach the conclusion contended for by such counsel.

We think it is manifest that Bartholomew county is held liable for the fund in question, that it should be paid into the county treasury, and distributed by the county auditor, through and out of the county treasury, to the proper school corporations, and that the township trustee has nothing to do with its distribution, except so much of it as may be apportioned to such parts of his township as are within the congressional township.

Is the present action properly brought on the relation of the board of commissioners of Bartholomew county ? It is provided by section six of article eight of our constitution, that " the several counties shall be held liable for the preservation of so much of the said fund as may be intrusted to them, and for the payment of the annual interest thereon." It was so held by this court in *Shoemaker* v. *Smith,* 37 Ind. 122. By the act of March 7th, 1873, the money derived from the rent of the unsold sixteenth section is intrusted to the counties within the meaning of the above constitutional

provision.   The county of Bartholomew is therefore liable for the funds in the hands of the appellant Davis, as township trustee, and is therefore interested in the fund.   It is provided by the seventh section of the school law that "upon failure of the trustee to discharge any of the duties required of him, relative to schools and school revenues, the board of county commissioners shall cause suit to be instituted on his official bond, and in case of recovery against him, the court rendering the judgment shall assess upon the amount thereof ten per cent. damages to be included in the judgment."

It is provided by the act of March 7th, 1873, that "it shall be the duty of such trustee to pay into the county treasury all rents collected and reported by him aforesaid." It is, however, contended by counsel for appellants that the clause quoted from the seventh section does not authorize a suit to be brought upon the relation of the board of commissioners, because it says that the board shall " cause suit to be instituted on his official bond."   It is argued that the true meaning is, that the board shall cause a suit to be instituted upon the relation of some other person or corporation. It was held by this court in *McCaslin* v. *The State, ex rel. Evans, post,* p. 151, that under the sixth subdivision of section 2 of the act prescribing the powers and duties of Auditor of State, which reads, " 6th.  Institute and prosecute, in the name of the State, all proper suits for the recovery of any debts, moneys or property of the State, or for the ascertainment of any right or liability concerning the same ;" the action was properly brought in the name of the State on the relation of the Auditor of State.

Counsel for appellants take this further position :

" But there is another reason that shows conclusively that the board of commissioners have nothing whatever to do with bringing actions of this character.   Section 126 of the school law (3 Ind. Stat. 465), in prescribing the duties of Superintendent of Public Instruction, provides that ' he shall exercise such supervision over the school funds and revenues as may be necessary to ascertain their safety, and

Davis *et al. v.* The State, *ex rel.* Board of Commissioners of Bartholomew Co.

secure their preservation and application to their proper object, and cause to be instituted, in the name of the State of Indiana, for the use of the proper fund or revenue, all suits necessary for the recovery of any portion of said funds or revenues ; and it is hereby made the duty of the proper circuit prosecuting attorney to prosecute all such suits at the instance of the Superintendent, and without charge against said funds or revenue.' The language of this section clearly and unequivocally designates that officer of the State, specially, and above all others, charged with the superintendence and interests of schools, as the person to look after the safety of their revenues, and to institute all suits necessary to their recovery. The suit is to be for the use of the proper fund, and in the name of the State, and the prosecuting attorney is to conduct the suits without charge. It seems to us no reasoning can make it clearer than the explicit language of the section as it stands, giving the minute directions that it does, that the Superintendent of Public Instruction is the person to institute and control suits of this character, instead of the board of commissioners, whose duties in connection with the schools are only incidental, and whose sole authority is derived from the general and vague expressions embraced in the seventh section above quoted. It stands later in the act, and is the last expression of legislative will, and if there is any conflict between the two, this must stand."

It should be observed that in the above quoted section, the language is, that the superintendent shall " cause to be instituted, in the name of the State of Indiana, for the use of the proper fund or revenue, all suits necessary for the recovery of any portion of said fund or revenue." If this language is sufficient to authorize the bringing of an action in the name of the State on the relation of the Superintendent of Public Instruction, we are unable to see why the language employed in the seventh section will not authorize a suit in the name of the State on the relation of the board of county commissioners. We think there is no doubt as

to the power of the board of commissioners to bring this action on their relation. The remedy given by section 126 is cumulative. What we have said disposes of the first, second, third, and seventh propositions as stated by counsel for appellants.

The sixth proposition is, that the sureties of Davis are not responsible for his failure to perform a duty imposed upon him by law which was passed subsequent to the execution of the bond in suit. The position of counsel is stated as follows :

"This action is upon the bond, and the sureties are certainly not bound beyond the terms of the contract.

" They merely undertake for the faithful performance of the duties of trustee by Davis, according to law, that is, according to existing law. Section 10 of the act touching official bonds, etc. (1 G. &. H. 164), provides, it is true, that official bonds shall be obligatory for the discharge of duties required by laws subsequently enacted, but that can be construed only as directing how the bond shall be worded, and not as making the contract mean what it does not express. This is clear from the provisions of section 12, declaring that bonds shall not be void for defects of form or substance, etc., but upon the suggestion of defects it shall be obligatory, etc. There is no suggestion of defects in this case. The terms of the bond only contemplate duties to be discharged prescribed by existing laws. This law requiring the payment of money into the treasury was passed after the date of the bond, which was October 26th, 1872. The law is settled beyond controversy now that such a bond does not cover duties created by legislation subsequently enacted. *The United States* v. *Kirkpatrick,* 9 Wheat. 720. Hence the demurrer by the sureties to the complaint, in the shape in which it stands, should have been sustained."

The case of *The United States* v. *Kirkpatrick, supra,* does not sustain the position assumed. That case was : The collector whose bond was in question, was appointed by the President on the 11th of November, 1813, and, by the terms of

his commission, he was to hold his office during the pleasure of the President, " and until the end of the next session of the Senate of the United States, and no longer." The bond in question was given by the collector, and by the defendants, as his sureties, on the 4th of December of the same year; and it follows, in its terms, the requirements of the act of Congress. On the 24th day of January, 1814, the President, with the advice and consent of the Senate, reappointed the party collector, etc.; and by his new commission he was to hold his office " during the pleasure of the President of the United States, for the time being." No new bond was taken under this commission. The action was based upon an alleged breach of the bond under the second commission, and for a failure to perform a duty imposed by an act of Congress passed subsequent to the execution of the bond in suit. Under these circumstances, the district judge held, that the liability of the sureties was strictly confined to the duties and obligations created by the acts passed antecedent to the date of the bond. The Supreme Court say:

" And we are of opinion that this is the true construction of the condition of the bond. There is nothing in the original act, under which the appointment was made, which contemplates a permanent and continuing liability for all duties under all laws which might be subsequently passed. In its terms, the condition, as expounded by the other parts of the act, had a principal reference to the assessments of direct taxes; and it is extended farther in its operation, only by the express and positive directions of the act of 2d of August, 1813, ch. 55, sec. 1. To this extent, therefore, it may well be of force; but to go beyond it, would be to exceed the legislative declaration, and create a general, where the act had fixed a limited, responsibility. If the argument on behalf of the government were correct, the provision, so solicitiously placed in this last act, was wholly unnecessary; for the liability would expand with the new duties imposed by every successive act of the legislature. But the act itself

furnishes no ground for such an exposition ; and we do not feel ourselves at liberty to give to contracts of this sort further efficacy than the laws and the parties must have had in their contemplation."

It is very obvious to us that the decision in the above case was placed upon the ground that the liability of the officer was limited by the act of Congress and the terms of the bond to the performance of such duties as were imposed upon the officer at the time the bond was executed ; and it is equally manifest that if the act of Congress had provided for a permanent and continuing liability for all duties, under all laws that might be subsequently passed, the court would have held the sureties liable for the failure of the officer to perform any duty imposed by acts passed subsequent to the execution of the bond.

The question of the liability of sureties upon official bonds is fixed and determined, in this State, by a positive statute. The tenth section of an act touching official bonds and oaths provides, that " all official bonds shall be payable to the State of Indiana, and every such bond shall be obligatory to such State upon the principal and sureties for the faithful discharge of all duties required of such officer by any law, then or subsequently in force, for the use of any person injured by any breach of the condition thereof."

The above section of the statute creates a permanent and continuing liability against the officer and his sureties for the failure to perform any duty imposed by any law which may be in force at the time the bond is executed, or which may be subsequently passed during the term for which such officer may be elected ; and it is not necessary that the bond should provide in express terms for such permanent and continuing liability. In legal contemplation, the above section is incorporated into and composes a part of every official bond and is as much binding upon the officer and his sureties as if the provisions of such section were actually copied into the bond. The defects which are provided against in

Davis *et al. v.* The State, *ex rel.* Board of Commissioners of Bartholomew Co.

the twelfth section of the above act have no reference to the continuing liability of the officer and his sureties.

The fourth and sixth propositions involve, in substance, the same question, and will be considered together. The real and substantial question presented is, whether at the time this action was commenced, the trustee had failed to discharge his duty by not paying into the county treasury the money which he had received for the rent of the congressional township lands. Prior to the passage of the act of March the 7th, 1873, the trustee was required to report to the county auditor the amount of money which he had received for the rent of such lands, but there was no positive requirement of the school law that he should pay such money into the county treasury, and the custom has generally prevailed for the township trustees to retain in their hands the money so reported to the auditor, and pay the same out to the persons entitled to receive the same, so far as the persons so entitled resided within the civil township of such trustee. By the original seventh section of the law, the trustee was required to report annually to the county commissioners at their March session. The second paragraph of the answer, to which a demurrer was sustained, alleged that Davis, the trustee, submitted his report on the 4th day of March, 1873, which was accepted and approved by the board. By an act approved on the 8th day of March, 1873, township trustees were required to render to the county commissioners annually, on the first Monday after the second Tuesday in October, and as much oftener as they may require, a report such as was required by the original seventh section. The principal change made by the act of March 8th, 1873, relates to the time of making the report. By the original seventh section, the report was required to be made at the March session, while by the amendment the report is to be made in October. This report is different from the one required by the forty-fourth section. This action was commenced on the 9th day of April, 1873.

The argument of counsel for appellants on this point is as follows:

" It will be seen that by the terms of his bond, Davis was to make report of his receipts and expenditures to the board of commissioners at their March term. This paragraph of answer avers that before the taking effect of the act of March 7th, 1873, amending section forty-four of the school law, viz., on the 4th of March, Davis filed with the auditor of the county his report to the commissioners of the county, in accordance with the law then in force, which was accepted and approved by the board. This was a full compliance with the law as it stood when the report was made, and which required an annual report, and that at the March session, unless oftener required by the commissioners. See section 7 of school law of 1865.

" Now is it a fair construction of the terms of the act of March 7th, to hold that an additional, annual report was to be made, beside the one already made? We insist that the very terms of the act itself show that such is not a fair interpretation of it. By the terms of the law, the trustee is to 'report annually by the fourth Monday in March,' and 'any trustee who has heretofore failed and neglected to so report, shall embrace in his first report such itemized statement,' etc. Now is there anything in this language, and it is all there is upon the subject, from which it can be inferred that the trustee is to make more than one annual report? Clearly not. When this first report is to be made is not stated. From the whole language of the act, it is to be inferred that this report is to be simply his annual report, and the facts stated in it are those to be embraced in such annual report. The requirement that it is to be made to the auditor instead of the board of commissioners cannot affect it, because the auditor is the clerk of the board, and a report to one would be in effect a report to the other.

" Hence this action which was brought before the time for his annual report in 1874, for failing to make a report in accordance with the requirements of a law which did not take effect

until after the time for making his annual report in 1873, and after it had been in fact made and approved, was prematurely brought, and the demurrer to the second paragraph of answer which set up those facts should have been overruled, inasmuch as the payment of money into the treasury is not, by the law, required until its collection is reported, hence there was no failure in that respect, and could be none until a report was due."

Counsel for appellee, in answer to the above position, argue as follows :

"It is said that the amended 7th section changes the time for making the report, and that the action in this case was commenced before the report there provided for was due. The answer is, that the action is not for a breach of duty imposed by that section, but for a breach of duty imposed by the amended forty-fourth section, which provides that the trustee shall report annually to the county auditor the income derived from the school section of land; 'and it shall be the duty of such trustee to pay into the county treasury all rents collected and reported by him as aforesaid.' What we have here said fully answers the sixth proposition —that the report made by the trustee, before the passage of the amended forty-fourth section, exonerated him from payment until his next annual report; for if the duty to pay into the treasury was not imposed before the passage of the amendment, by necessary implication and intendment the amendment imposes it as a distinct duty to pay the money into the county treasury. And when the amendment passed, the fund, if before rightfully held by the township trustee, was no longer rightfully held by him, and from that moment he wrongfully withheld it from the county treasury."

The question presented for our decision is, whether the amended forty-fourth section imposed upon Davis the duty of submitting to the auditor of the county by the fourth Monday in March, 1873, a report in accordance with the requirements of such section, and we have after much delib-

eration and mature consideration reached the conclusion that it did. By the original section, Davis was required to report annually by the fourth Monday in March, to the auditor, the amount of rent which he had received from the unsold sixteenth section in his township. This report he submitted on the 4th day of March, 1873. On the 7th day of the same month, the legislature passed a law, which on that day took effect and went into force, by which he was required to make to the auditor annually by the fourth Monday of March, a very different kind of a report, and to pay into the county treasury all the money which he should show by such report to be in his hands. The section does not say that in his next annual report he shall comply with such requirement, but it says that he shall annually make such report by the fourth Monday in March, and he shall in his first report embrace such itemized statement. The manifest object of the section was to require trustees to pay into the county treasury all the money in their hands which had been derived from the rent of such lands, to the end that it might be justly and equitably distributed to all the inhabitants of the congressional township in which such section lies. To give the section the construction contended for by counsel for appellants, would have delayed such payment twelve months. From the approval of the act of March 7th, 1873, the money which Davis had in his hands was wrongfully held by him and should have been in the county treasury. Davis was chargeable with notice of the passage of the act in question, and there was sufficient time for him to have complied with the act in question.

Finally, it is claimed that the damages are excessive, for the reason that ten per cent. damages was added to the amount of money which Davis had in his hands. The court below was imperatively required by the seventh section of the school law to add such damages. There is no discretion given in such cases. The language of the law is, "the court rendering the judgment shall assess upon the amount thereof ten per cent., to be included in the judgment." The

recovery was not excessive.   It does not appear that Davis acted dishonestly or with any bad intention.   He was simply mistaken in his duty.   It may be a hardship upon him, but we have no more discretion than had the court below.

The judgment is affirmed, with costs.

This cause has been appealed to the Supreme Court of the United States.— REP.