## STATE OF INDIANA, EX REL. SAILOR ET AL. *v.* BLIND ET AL.

[No. 22,199.   Filed May 21, 1914.]

1. OFFICERS.—*Township Trustee.*—*Wrongful Expenditure of Public Funds.*—*Action by Taxpayers.*—The holding in *Miller* v. *Jackson Tp.* (1912), 178 Ind. 503, as to the right of taxpayers to maintain an action against a township trustee and the sureties on his bond to recover for the wrongful expenditure of public funds, is adhered to.   p. 695.

VOL. 181—44

2. SCHOOLS AND SCHOOL DISTRICTS.—*Common School Fund.—Use. Constitutional Provisions.*—The inhibition of §3, Art. 8, of the Constitution, respecting the diminution of the common school fund, by its terms applied to the principal and not to the use of the interest on the fund, but under §6407 Burns 1908, Acts 1883 p. 118, such interest must be expended for the use of the common schools for tuition.    p. 695.

3. SCHOOLS AND SCHOOL DISTRICTS.—*Tuition Funds.*—The tuition fund of a township for a given year, whether derivea from the congressional fund or from direct levy, constitutes a common fund for tuition purposes, although the unexpended portion of the tuition revenue remains a part of the common school tuition fund of the State.    p. 696.

4. OFFICERS.—*Township Trustee.—Wrongful Expenditure of Public Funds.—Action on Bond.—Liability.*—Where township funds were paid out by the trustee for the use of the township in proper channels, but without the formality of an appropriation, or without submitting estimates, or awarding contracts, and the township received and retained the benefit of such expenditures, the taxpayers of the township, after standing by for a long period of time while such expenditures were made and the benefits accepted and used, cannot recover the money so expended, either from such trustee or from the sureties on his official bond.    p. 697.

From Superior Court of Tippecanoe County; *John S. Lairy*, Special Judge.

Action by the State of Indiana, on the relation of Ira E. Sailor and others, against Charles O. Blind and others. From the judgment rendered, the relators appeal.    *Affirmed.*

*C. V. McAdams* and *C. E. Thompson*, for appellants.

*William B. Durborrow, C. E. Russell* and *Stuart, Hammond & Simms*, for appellees.

MYERS, J.—Action by appellants as resident voters and taxpayers of Adams Civil and School Townships of Warren County, Indiana, against Charles O. Blind as trustee of said Adams Township and others, as sureties on his bond.    They allege the giving of thirty days' written notice to the present trustee, successor of Blind, and the township advisory board, under §9595 Burns 1908, Acts 1901 p. 415, of the misappropriation of funds as alleged in the complaint, and

demand on them to bring suit, which they refused to do, and they refused to take any action for the collection of the funds. They made the civil and school townships parties defendant, and allege that they bring the action for, and in behalf of the civil and school townships, and make them parties defendant to the end that judgment may be rendered, and given them. Nine specific breaches of the bond are alleged. The first is, that in the year ending January 1, 1909, Blind as trustee, expended $336.22 of the tuition fund in his hands, in excess of the appropriation for that year; that this excess was paid to teachers regularly employed, and who taught in the public schools of the township during the period. The second is, that as such trustee, he paid out $1,496.62, July 1, 1908, and charged the amount to the tuition funds of the township, in discharge of a loan made upon advice and authority of the advisory board; that there was no appropriation to pay this sum, and that it was paid out of the tuition fund derived by taxation in the year 1907, and from the common school revenue and interest on the congressional fund, and no special levy was made to pay said loan, and the loan was not made to build a schoolhouse. The third specification is, that the trustee paid out $103.89 of the township funds on account of loans, or borrowed money, and $966.54 of the special school fund derived from taxes levied on account of loans or borrowed money, borrowed by authority of the advisory board, before said loans upon which payments were made, were effected. That no appropriation was at any time made to be used in payment of such loans, but that the funds were applied in payment of loans previously authorized, and for the benefit of the respective funds. The fourth breach charges the payment of the sum of $30.30 out of the township fund, $48.30 out of the school fund, and $32 out of the road fund for and on account of alleged illegal purposes, and purposes not authorized by law and unnecessary. These are alleged as to the township fund, to be for postage, membership in and

expense of attending trustees' association, costs in a case brought to require him to give a new bond, and a township guide; respecting the special school fund, one item is for diplomas, and one for music for commencement; in the road fund, for road tax lists; and that no appropriation had ever been made for the payment of any of these items. The fifth breach is, that the trustee paid out $1,027.62 on account of special school funds, $659.80 on account of road funds, and $193.40 on account of township funds. The expenditures are itemized, and in the special school fund embrace various supplies and improvements, such as, erasers, floor oil, disinfectants, building closets, school apparatus, brooms, books, library cases, laboratory table, crayon, repairing boilers, etc.; in the road fund, sewer pipe, scrapers, drags, freight, etc.; in the township fund, blank books, record blanks, receipts, etc. It is alleged that none of the expenditures were for fuel, or literary periodicals, or for current or incidental repairs to schoolhouses; that no estimate was made by the trustee in advance of the purchases, or bids received or contracts made therefor, negativing in detail the requirements of §9598 Burns 1908, Acts 1899 p. 150, §9, and that the alleged expenditures were illegal and void. The sixth specification alleges the payment of $775.89 out of the road funds, for material and labor in construction and repair of bridges and culverts, such as, bridge plank, sewer pipe, cement and concrete work; that the trustee did not advise the board of commissioners of the necessity thereof, before making the expenditures, and the board of commissioners did not at any time find, or declare that the bridges or culverts were not of sufficient importance to justify an appropriation from the county treasury to do the work, and the expenditures were without authority of law. The seventh breach alleged is in payment of $1,317.07 in excess of the appropriations therefor, on account of township, road, and special school funds, detailing the amounts expended, and the amount appropriated in each case. It

is alleged as to these items, that they were paid for services performed for, and for goods and supplies sold to, and received by the township, and that the advisory board had made no appropriations except those shown, that in each instance there was an appropriation, but not equal to the expenditures made. The eighth breach is in the alleged payment of $643.13 for goods purchased, and received, and for services rendered to the township in respect to the township road, and special school funds, for which no appropriation had been made. The ninth alleged breach is in paying $1,210.46 out of the special school fund, on account of fuel for schoolhouses of the township, and that he did not, before the purchase, or any part of it, give any notice, or invite, or receive bids, and none were submitted to the advisory board, and no contract or contracts for any part thereof were awarded by the trustee after he had advised with the advisory board, and that he did not at any time consult, or advise with such board in regard thereto, and made no written contract or contracts for such fuel, and required, and received no bond for furnishing such fuel, or any part of it, or the performance of any contract to furnish fuel.

It is alleged as to each of the breaches, that the extrustee took credit and was allowed credit in his settlements for these payments in his reports and account, and has never paid any part of either of such sums to his successor or any other person, or officer for the use of the township.

There was a demurrer by Blind to the complaint, on the grounds: (1) That plaintiff had not legal capacity to sue, (2) that there was a defect of parties in that the members of the existing advisory board, as such, in both the civil and school townships, are necessary parties defendant, and to each alleged breach of the bond as not stating facts sufficient to constitute a cause of action. The sureties demurred jointly on the same grounds as the principal. The civil and school townships also demurred on the same grounds. The

court below sustained the demurrer of Blind to the complaint as to the second, third and ninth breaches alleged, and overruled it as to the other breaches. The same ruling was made as to the other defendants. Blind answered in seven paragraphs, the first a general denial, and the other six addressed to the first, fourth, fifth, sixth, seventh and eighth breaches of the bond alleged. The civil and school townships answered by general denial. The extrustee and the sureties filed a joint answer, the first in general denial, and six additional paragraphs, the second pleading former adjudication, and the others addressed to the first, fourth, fifth, sixth, seventh and eighth alleged breaches. Appellants demurred to the second, third, fourth, fifth, sixth and seventh separate paragraphs of the answer of Blind, extrustee, as wanting in allegations of facts to constitute a defense. Like demurrers were interposed to the affirmative joint answers of the extrustee and the sureties. Demurrers were sustained to the second, third, fourth, fifth, sixth and seventh paragraphs of answer of Blind, and to the second, third, fourth, sixth and seventh paragraphs of the joint answer, and overruled as to the fifth paragraph. Blind then filed by leave, additional paragraphs of answer Nos. 8-14, both inclusive, to which separate demurrers by appellants were addressed for want of facts to constitute a defense to the breaches alleged to which they were addressed. The demurrer to the eighth paragraph was sustained, and overruled as to the ninth, tenth, eleventh, twelfth, thirteenth and fourteenth paragraphs. Blind then withdrew the general denial, as to the fourth alleged breach of the bond, and refused to plead further as to that alleged breach, and elected to stand on his other answers as to that breach. The first and fifth paragraphs of the joint answer were withdrawn, and relators refused to plead further as to the ninth, eleventh, twelfth, thirteenth and fourteenth paragraphs of answer of Blind, and elected to stand on their demurrers to those paragraphs. There was then judgment

in favor of Adams Township against the principal, and sureties for $62.30 on account of the fourth alleged breach of the township and road fund, and in favor of Adams School Township for $30.30 as to the alleged fourth breach of the bond, and judgment against the defendants for costs, and judgment against plaintiffs as to the second, third, fifth, sixth, seventh, eighth and ninth alleged breaches of the bond. The errors here assigned are as to the rulings against appellant on the demurrers as above shown.

The first complaint was filed June 30, 1909, and withdrawn October 19, 1909. The second paragraph of complaint to which the demurrers and answers were addressed was filed October 1, 1909. The first answers were filed December 5, 1910. The additional eighth, ninth, tenth, eleventh, twelfth, thirteenth and fourteenth paragraphs of answer were filed, and judgment rendered June 17, 1911. The questions presented arise on the ruling on the demurrers to the second, third and ninth alleged breaches of the bond, and to the additional ninth, eleventh, twelfth, thirteenth and fourteenth paragraphs of answer of Blind, addressed to the first, fourth, fifth, sixth, seventh and eighth specifications of breach of the bond, and the constitutionality of the act of 1911 (Acts 1911 p. 693) on which the additional answers are grounded.

The majority of the court adhere to the ruling in *Miller* v. *Jackson Tp.* (1912), 178 Ind. 503, 99 N. E. 102, 111,

1. both as to the capacity of the relators to sue, and as to the law applicable to the questions here involved. As to the second, third and ninth alleged breaches of the bond, in addition to the rule declared in the

2. Miller case, they are cured by the act of 1911, if it is valid, as it is shown as to each of these alleged breaches, that the money was paid out for the use of the township in the proper channels, unless it be that the allegation that payments were made from the congressional school fund interest creates an exception as to the second breach

alleged. The inhibition of §3, Art. 8, of the Constitution, respecting the diminution of the common school fund, by its terms applies to the principal, and not to the use of the interest on the fund, though the latter must be expended for the use of the common schools, for tuition. §6407 Burns 1908, Acts 1883 p. 118. It is shown by the allegations of this alleged breach of the bond, that the money was applied to tuition purposes to repay loans made for that fund, and appears from the allegations to have been a loan made in anticipation of the tax levy of 1907, as the loan was made April 11, 1908, and paid July 1, 1908, when the tuition fund, whether from the congressional fund, or from direct levy, became a common fund for tuition purposes. §§6407, 6443, 6444 Burns 1908, Acts 1883 p. 118, Acts 1903 p. 409, Acts 1895 p. 153. If this were not true, no action would lie by relators as to that fund, but action would have to be in the name of the State, under §6439 Burns 1908, Acts 1907 p. 449. The action alleged to be lacking, was an appropriation. True, the unexpended tuition revenue remains a part of the common school tuition fund of the State, §§6435, 6439 Burns 1908, Acts 1905 p. 34, Acts 1907 p. 449, and in the succeeding distribution of the fund, this is taken into account and deducted. But no deduction is made unless it appears that the disbursements made on account of tuition revenue have been less than the amount of State tuition revenue apportioned for the preceding year, thus taking no account of the local tuition revenue in that distribution. §6475 Burns 1908, Acts 1897 p. 291, §4. This of course is done for the purpose of equalization of the fund. *State, ex rel.* v. *Matthews* (1898), 150 Ind. 597, 50 N. E. 572; *Quick* v. *Springfield Tp.* (1856), 7 Ind. 636; *Quick* v. *Whitewater Tp.* (1856), 7 Ind. 570.

It appears as to the second and third alleged breaches, that the fund was properly applicable, if it had been appropriated, and as to the ninth alleged breach, that it charges

expenditures made without the submission of esti-
mates or awarding contracts. It is insisted however
that the alleged breaches, state causes of action within
the rule in the Miller case, for the reason that the rule in
that case is founded on the answers of the sureties, and
not on the act, or answers of the trustee, as in that case;
but if the rule in that case is correct, there could be no
good reason for its application in favor of sureties, which
would not apply to the principal, though it was invoked
in the Miller case on the answers of sureties, but all the
reasoning of the case, and the cases on which it is founded,
is as much in favor of the principal as of the sureties. There
is apparent force in appellant's argument that it at least
makes a *prima facie* case, but it seems not to be applicable
here where the facts seem to be fairly stated, and show that
the various funds expended, were such as were authorized
by law, and were in fact received for the use of the town-
ship, and were apparently necessary.

The ninth, eleventh, twelfth and fourteenth answers to
the first, fifth, sixth, seventh and eighth alleged breaches, by
their respective allegations bring the alleged breaches within
the rule in the Miller case, and the provisions of the curative
act of 1911 (Acts 1911 p. 693). It is claimed that as the
bond was executed, and the suit begun before its enactment,
the cause of action had become a right vested in the public,
which must be measured by the law then in force, and that
the act is invalid as impairing the obligation of the contract
(bond) sued on, in violation of §10, Art. 1 of the Federal
Constitution, and §24 of the Bill of Rights (Art. 1, §24)
of the State Constitution. Appellees contend that the an-
swers are good under the rule in the Miller case irrespective
of the curative act of 1911, but that that act is also valid.
The doctrine of the Miller case is vigorously assailed, and for
reasons heretofore indicated, the writer at least doubts the
correctness of the rule, in which doubt Mr. Justice Cox con-
curs, but a majority of the court adheres to it, and under the

doctrine of that case, the answers were sufficient. It therefore becomes unnecessary to consider the question of the constitutionality of the act of 1911, and the judgment is affirmed.

NOTE.—Reported in 105 N. E. 225. For a general discussion of taxpayers' actions, see Ann. Cas. 1913 C 884. As to the right of a taxpayer to maintain an action to recover money illegally paid out of the public treasury, see 19 Ann. Cas. 776. On the question of appropriations or use of moneys of towns, see 14 L. R. A. 474. See, also, under (1) 29 Cyc. 1463; 38 Cyc. 632; (2) 35 Cyc. 825; (4) 38 Cyc. 631, 657.