# MILLER ET AL. *v*. JACKSON TOWNSHIP OF BOONE COUNTY ET AL.

[No. 21,747.　Filed July 2, 1912.　Rehearing denied November 22, 1912.]

1. OFFICERS.—*Township Trustee.—Wrongful Expenditure of Public Funds.—Action by Taxpayers.*—The right of a taxpayer to sue in equity on account of the unlawful expenditure of public funds by an officer, is not affected by the township advisory board act (§9590 *et seq.* Burns 1908, Acts 1899 p. 150), except that he must comply with the restrictions of said act by giving notice to the advisory board, as required by the act, before bringing the suit. p. 511.

2. OFFICERS.—*Wrongful Expenditures of Public Funds.—Action by Taxpayers.*—A suit in equity may be maintained by a taxpayer, after requisite notice, against an officer in his individual capacity, or against him and his sureties on his bond, either while he holds the office, or afterwards, to recover for wrongful expenditure of public funds.　p. 511.

3. STATUTES.—*Construction.—Legislative Intent.*—Where the language or any part of a statute is ambiguous, it should be construed in consonance with the spirit of its enactment.　p. 512.

4. OFFICERS.—*Township Trustee.—Wrongful Expenditure of Public Funds.—Action.—Parties.—Taxpayers.*—An action at law on the bond of a township trustee for the wrongful expenditure of public funds, cannot be maintained by a taxpayer since he has no legal interest and no judgment could be rendered in his favor, but in such action the township, or the township trustee, is the proper relator.　p. 512.

5. OFFICERS.—*Township Trustee.—Wrongful Expenditure of Public Funds.—Action by Taxpayers.—Relief.*—A court of equity, in a suit by a taxpayer on behalf of the township against a township trustee and the sureties on his bond for the wrongful expenditure of public funds, where the township, after proper notice, has failed to act, will administer not only equitable, but also such legal remedies as may be necessary to make the relief complete.　p. 512.

6. OFFICERS.—*Township Trustee.—Wrongful Expenditure of Public Funds.—Action by Taxpayer.—Demand.*—No demand is necessary before suit in equity brought by a taxpayer against a township trustee and the sureties on his bond, after the expiration of his term of office, to recover for the township money unlawfully expended, since under §9575 Burns 1908, §5999 R. S. 1881, it is

the duty of the trustee, at the expiration of his term, to deliver to his successor all moneys belonging to the township.  p. 513.

7. MUNICIPAL CORPORATIONS. — *Officers.* — *Contracts.* — *Validity.* — An officer of a municipal corporation cannot bind the corporation by any contract in which he is personally interested.  p. 513.

8. OFFICERS.— *Township Trustee.*— *Public Funds.*— *Gifts.*— Township trustees cannot lawfully make gifts from public funds by paying for pretended services that were never rendered.  p. 513.

9. OFFICERS.—*Township Trustee.*—*Wrongful Expenditure of Public Funds.*—*Action by Taxpayer.*—*Bond.*—*Breach.*—*Complaint.*— *Sufficiency.*—In a suit in equity by a taxpayer against a township trustee and the sureties on his bond, to recover for the wrongful expenditure of public funds, where each breach of the bond averred involved the alleged violation of some provision of the advisory board act (§9590 *et seq.* Burns 1908, Acts 1899 p. 150), or of other rule of law, that rendered invalid the contract under which the expenditure was made, such allegations are, *prima facie,* sufficient to constitute a cause of action for the recovery of the funds so expended.  p. 514.

10. OFFICERS.—*Township Trustee.*—*Unlawful Expenditures.*—*Action by Taxpayer.*—*Nature.*—A suit against a township trustee for unlawful expenditures, brought by a taxpayer, is necessarily of equitable cognizance.  p. 516.

11. ACTION.—*Action at Law.* — *Equitable Defense.* — Under §352 Burns 1908, §347 R. S. 1881, providing that a defendant may set forth in his answer as many grounds of defense, whether legal or equitable, as he shall have, an equitable defense is permissible in an action at law.  p. 516.

12. TOWNSHIPS.—*Advisory Board.*—*Examination of Trustee's Report.*—*Nature of Act.*—*Approval of Unlawful Expenditures.*—*Effect.*—In examining and confirming the reports of the township trustee, the advisory board, created by §9590 *et seq.* Burns 1908, Acts 1899 p. 150, does not act in a judicial capacity, but acts merely as a board of audit, and its approval of unlawful expenditures does not render such expenditures valid.  p. 516.

13. TOWNSHIPS.—*Expenditures by Trustee.*—*Appropriations.*—*Statute.*—Under §9590 *et seq.* Burns 1908, Acts 1899 p. 150, creating the township advisory board, defining its duties, providing for appropriations for expenditures to be made, and requiring the township trustee to present to such board itemized statements of proposed expenditures, the advisory board is required to act on the itemized statement of the trustee, and by written record make an itemized appropriation for the proposed expenditures, and the function of such appropriation cannot be performed by the tax levy.  p. 517.

14. *Townships.—Contracts.—Validity.—Items Not Included in Appropriations.*—Any contract by a township trustee for services or supplies not included in an appropriation, as provided by §9590 *et seq.* Burns 1908, Acts 1899 p. 150, is void. p. 518.

15. TOWNSHIPS. — *Void Contracts.* — *Recovery by Claimant.* — Although a contract with a township has been fully executed on the claimant's part, he cannot recover anything thereunder from the township, if the contract was in violation of §9590 *et seq.* Burns 1908, Acts 1899 p. 150, defining the duties of the advisory board and requiring appropriations to be made for all proposed expenditures. pp. 519, 524.

16. OFFICERS. — *Township Trustees.* — *Wrongful Expenditures of Public Funds.—Executed Contracts.—Right to Recover.*—Where a township trustee, in good faith, but without complying with all the requirements of §9590 *et seq.* Burns 1908, Acts 1899 p. 150, defining the duties of the advisory board and requiring appropriations to be made for proposed expenditures, expended public funds for lawful and necessary objects, and the township in the meantime has received and retained the benefit of such expenditures, the taxpayers cannot, after standing by for a long period of time while such expenditures were made and the benefits accepted and used, recover from the trustee and the sureties on his bond the moneys so expended. p. 520.

17. OFFICERS.—*Township Trustee.—Wrongful Expenditure of Public Funds.—Liability.—Statute.*—When considered as a whole, the township advisory board act (§9590 *et seq.* Burns 1908, Acts 1899 p. 150) makes the trustee *prima facie* liable for the expenditure of any fund to an account for which it was not appropriated, or in a manner violative of the act, and to escape such liability he has the burden of showing that the contract under which the public money was expended was with one legally authorized to enter into it, that the expenditure was for a lawful purpose, and that the article purchased was necessary and of a value equal to the expenditure, was received, used or retained by the township, and that the transaction was without fraud. p. 523.

18. TOWNSHIP.—*Purchase of Goods from Township Trustee.—Liability.*—A township incurs no liability for goods purchased by the trustee from himself, although he complies with all the provisions of the advisory board act (§9590 *et seq.* Burns 1908, Acts 1899 p. 150), since public policy forbids it, and §2423 Burns 1908, Acts 1905 p. 584, §517, prohibits the trustee from entering into any contract in which he is personally interested under a penalty of fine and imprisonment. p. 525.

19. EQUITY.—*Equitable Defense.—Violation of Criminal Statute.—*

An equitable defense cannot be predicated on the violation of a criminal statute.  p. 525.

20.  OFFICERS.— *Township Trustee.— Contracts with Township.— Recovery of Money Expended.—Action by Taxpayers.—Estoppel.* —Taxpayers are not estopped from recovering funds expended by a township trustee under contracts in which he was interested, and may also recover where the payments were made for purposes not warranted by law.  p. 526.

21.  APPEAL.—*Review.—Conclusions of Law.*—In a taxpayer's suit against a township trustee and the sureties on his official bond to recover money unlawfully expended, the court's conclusions of law that the township was entitled to recover from the trustee were erroneous as to items of expenditure which although not in accordance with the requirements of §9590 Burns 1908, Acts 1899 p. 150, were made in good faith for lawful purposes under contracts with persons legally authorized to contract with the township, and for articles which were necessary and of a value equal to the expenditures, and which were received, used and retained by the township.  p. 526.

22.  COURTS.—*Courts of Equity.—Powers.*—Equity follows the law and courts of chancery have no power to limit the force of legislative enactments.  p. 527.

23.  CONSTITUTIONAL LAW.—*Vested Rights.—Impairment by Subsequent Statute.*—In a taxpayer's suit against a township trustee and the sureties on his bond for unlawful expenditure of public funds, where the judgment was rendered prior to the passage of an act entitled "An act for the relief of township trustees in certain cases" (Acts 1911 p. 693), the rights of the parties under the judgment, as fixed by the law when the judgment was rendered, were vested and could not be impaired by that act.  p. 527.

From Hendricks Circuit Court, *James L. Clark,* Judge.

Action in the name of the State of Indiana by William B. Hedge and others, taxpayers of Jackson Township in Boone County, against William H. Miller, a former trustee of the township, and others.  From a judgment for plaintiffs, the defendants appeal.  *Reversed.*

*Terhune & Adney, Samuel M. Ralston, Darnell & Darnell, Enloe & Pattison,* for appellants.

*Samuel R. Artman, Crane & McCabe, Brill & Harvey, J. Frank Hanly* and *C. V. McAdams,* for appellees.

MORRIS, J.—This was an action in the name of the State of Indiana, brought by William B. Hedge, and three other taxpayers of Jackson township, Boone county, as relators, against appellants William H. Miller, a former trustee of the township, and Thomas F. Young and eleven other sureties on his bond, and against the civil and school townships of Jackson, for the recovery of funds alleged to have been misappropriated. The complaint, filed April 7, 1909, was in two paragraphs.

In the first paragraph it is alleged, among other things, that at the November, 1904, election Miller was elected trustee of Jackson township, and executed his bond, in the penalty of $20,000, payable to the State of Indiana, with Thomas F. Young, and eleven other appellants as sureties thereon; that appellant Miller served as trustee of the township from January 1, 1905, to January 1, 1909, when he was succeeded as such officer by Emery Graves. The first paragraph alleges fourteen specific breaches of the bond, containing itemized specifications of funds disbursed by the trustee, all of which, it is alleged, were paid out by the trustee, without any appropriation therefor ever having been made by the township advisory board, and without any authority therefor from the board; and it is alleged that the trustee, in his various settlements and reports, took credit for such expenditures against the various funds specified, as follows: (1) from the road fund, for bridge and culvert repair, $2,678; (2) from special school fund, for fuel for schoolhouses, $3,495.99; (3) from the township fund, for trustee's salary for three years, $1,866.85; (4) from township fund, for office rent and storage of township property, $281; (5) from special school fund, for fire insurance, $415.50; (6) from special school fund, for hauling children to school, $5,225.85; (7) from special school, township and road funds, without any notice to bidders, for school furniture, fixtures, school and road supplies, $7,418.97; (8) from special school fund, $1,757, for

installing a heating plant in a schoolhouse, without notice to bidders; (9) from public funds, without legal authority, regardless of an appropriation, for car fare, livery hire, telephone service, and traveling expenses, $128.35; (10) from "additional special school fund," created by sale of bonds for reconstructing a schoolhouse, for payment of bank notes, and various other purposes, $5,000; (11) from township and special school funds, for overdrafts, $1,972.11; (12) from the public funds of the township, for attorney's fees, for pretended legal services that were never rendered, $97; (13) from the township and special school funds, for borrowed money, $7,400.85.

In relation to the fourteenth breach, it is alleged that there came into the hands of Miller, as trustee, public funds of the aggregate amount of $100,760.06, distributed among the several funds as follows: Township fund, $5,499.82; tuition fund, $32,416.81; road fund, $8,025.26; special school fund, $54,818.17; that from the total received he turned over to his successor $1,922.62, and expended the balance for various purposes; that of said balance, so expended, only the sum of $3,514 was disbursed in pursuance of appropriations made by the township advisory board, and the remainder, to wit, the aggregate sum of $95,323.44, was paid out by Miller without any appropriation having been made by the advisory board for the disbursements made, and without any authority from the advisory board for such disbursements.

The complaint alleges that the relators are, and were during the last five years, residents and taxpayers of the township; that on March 5, 1909, the relators made a demand, in writing, on the township trustee and members of the township advisory board that suit be instituted on Miller's bond for the recovery of the above-named funds; that no suit was instituted, and more than thirty days have elapsed since the notice was given, and for that reason this complaint is filed by the relators for the use and benefit of the civil and school

townships of Jackson.   Judgment is prayed in the sum of $20,000.

The second paragraph of the complaint is the same as the first concerning the election of the trustee, the execution of his bond, and the demand on his successor and the advisory board for instituting suit.   Seven distinct breaches of the bond are alleged, as follows: (1) Miller paid to himself, out of the township fund, during his term, $90.85 for car fare and traveling expenses; (2) that he paid to himself, from the township fund, $185 for office rent, sheltering township property and election supplies, and from the special school fund he paid himself $30 for shedding school wagons; (3) that in 1905 and 1906 he took the enumeration of school children, and charged therefor as a part of his salary the sum of $40 each year, and paid himself therefor, and notwithstanding such payment, he paid to one Young, for the same services, the sum of $60, and took credit therefor; (4) that Miller and one Gardner were partners in the drug and notion business during Miller's term of office; that said partnership sold to the trustee various school supplies, aggregating in value $309.66, without any notice to bidders for such supplies, and without written contract therefor, and the firm was paid the above amount out of the special school fund, and Miller took credit therefor in his settlement; (5) that the trustee, without public notice or letting, privately contracted for school supplies, furniture and fixtures, repairs to schoolhouses, etc., and paid therefor the aggregate sum of $11,208.89 from the special school fund; (6) that Miller paid from the same fund $1,751.25 for installing a heating plant in a school building, on a contract let without notice or competitive bidding; (7) that in 1908 he paid $1,454.67 for fuel from the special school fund, in excess of the amount authorized by the advisory board to be expended; that the fuel was not needed, and in fact was not used in 1908; that the fuel was purchased without authority from the advisory board and without notice to bidders.

The trustee demurred to each paragraph of the complaint, on the ground that relators did not have capacity to sue,' and that the complaint did not state facts sufficient to constitute a cause of action. A like demurrer was filed by the sureties. Each demurrer was overruled, and this action of the court is here assigned as error.

It is contended by appellants that an action at law on the bond of a municipal officer cannot be maintained by a taxpayer of a municipality, because such action must be brought by the party interested (§253 Burns 1908, §253 R. S. 1881), and that the township advisory board act of 1899 (Acts 1899 p. 150, §9590 *et seq.* Burns 1908) does not authorize a suit in equity by a taxpayer against a trustee after the expiration of his term.. It is appellants' theory that §6 of the act which authorizes a suit by a taxpayer must be construed as giving such right only where the advisory board refuses to bring a suit against a trustee while in office. So much of §6 as is applicable here reads as follows: ''And any payment of any debt not so authorized from the public funds of such township shall be recoverable upon the bond of the trustee in a suit, which it is hereby made the duty of said [advisory] board to institute and prosecute in the name of the state, for the use of the township. * * * And if the board, on the written demand of any taxpayer, fails for thirty (30) days to bring suit, then such, or any other taxpayer may bring the same, in the name of the state, for the use of the township.''

It is appellants' theory that inasmuch as it is the duty of the trustee to bring the suit on the bond, and he could not well institute a suit against himself, that this statute substitutes the advisory board as a proper relator to bring the suit against the incumbent trustee, but after the expiration of the term there is no reason why the successor should not bring it. It is not necessary to determine this question here. Both the advisory board and the trustee failed to sue after

notice given. The right of a taxpayer to sue in equity

1. existed before the statute was enacted. *Zuelly* v. *Casper* (1903), 160 Ind. 455, 67 N. E. 103, 63 L. R. A. 133; *State, ex rel.,* v. *Holt* (1904), 163 Ind. 198, 71 N. E. 653. That right of the taxpayer was in noway abridged by the statute, except by requiring notice to the advisory board, under certain conditions, before bringing the suit; and his right was in no other respect affected, except by the portion of the enactment that declares a notice of thirty days to be sufficient.

This is not an action at law, but is a suit in equity, and such suit may be maintained by a taxpayer, after requisite notice, against an officer in his individual capacity, or

2. against him and his sureties on his bond, either while he holds the office, or afterwards. *State, ex rel.,* v. *Holt, supra; Zuelly* v. *Casper, supra; Land, etc., Lumber Co.* v. *McIntyre* (1898), 100 Wis. 245, 75 N. W. 964, 69 Am. St. 915; 4 Thompson, Corporations §4479; 2 Dillon, Mun. Corp. (4th ed.) §915; *Doud* v. *Wisconsin, etc., R. Co.* (1886), 65 Wis. 108, 25 N. W. 533, 56 Am. Rep. 620; *Hinz* v. *Van Dusen* (1897), 95 Wis. 503, 70 N. W. 657, *Willard* v. *Comstock* (1883), 58 Wis. 565, 17 N. W. 401, 46 Am. Rep. 657; *Frederick* v. *Douglas County* (1897), 96 Wis. 411, 71 N. W. 798; *Quaw* v. *Paff* (1898), 98 Wis. 586, 74 N. W. 369; *Walker* v. *Dillonvale* (1910), 82 Ohio St. 137, 92 N. E. 220, 19 Ann. Cas. 773; 28 Cyc. 1734; *Tukey* v. *Omaha* (1898), 54 Neb. 370, 74 N. W. 613, 69 Am. St. 711; *Webster* v. *Douglas County* (1899), 102 Wis. 181, 77 N. W. 885, 78 N. W. 451, 72 Am. St. 870; *Cathers* v. *Moores* (1907), 78 Neb. 13, 113 N. W. 119, 14 L. R. A. (N. S.) 302; *In re Cole's Estate* (1899), 102 Wis. 1, 78 N. W. 402, 72 Am. St. 854; *Rice* v. *Milwaukee* (1898), 100 Wis. 516, 76 N. W. 341; *Bailey* v. *Strachan* (1899), 77 Minn. 526, 80 N. W. 694; *Stone* v. *Bevans* (1902), 88 Minn. 127, 92 N. W. 520, 97 Am. St. 506; *Independent School District, ex rel.,* v. *Collins* (1908), 15

Idaho 535, 98 Pac. 857, 128 Am. St. 76; *Orr v. State Board, etc.* (1891), 3 Idaho 190, 28 Pac. 416; *Chippewa Bridge Co. v. Durand* (1904), 122 Wis. 85, 99 N. W. 603, 106 Am. St. 931; *Griffin v. Drennen* (1906), 145 Ala. 128, 40 South. 1016; *Shepard v. Easterling* (1901), 61 Neb. 882, 86 N. W. 941; *Reed v. Cunningham* (1905), 126 Iowa 302, 101 N. W. 1055.

The advisory board act of 1899 was enacted for the better protection of township taxpayers, as plainly appears from the language of the act, and should be construed in 3.  consonance with the spirit of its enactment, if the language of any part of the act were, in any particular, ambiguous. *State, ex rel., v. Blair* (1869), 32 Ind. 313; *City of Evansville v. Summers* (1886), 108 Ind. 189, 9 N. E. 81; *Collins v. State* (1906), 38 Ind. App. 625, 78 N. E. 851; *Board, etc., v. Given* (1907), 169 Ind. 468, 80 N. E. 965, 82 N. E. 918, and cases cited.

There is here, however, no ambiguity, and appellants' contention is unwarranted. In an action at law on the bond, the township or the trustee would be the proper re- 4.  lator. *State, ex rel., v. Wilson* (1888), 113 Ind. 501, 15 N. E. 596. Such action could not be maintained by a taxpayer because of a lack of legal interest, and because no judgment could be rendered in his favor. *State, ex rel., v. Harris* (1883), 89 Ind. 363, 46 Am. Rep. 5.  169; 29 Cyc. 1463. Here, however, no judgment is sought in favor of relators, but in favor of the municipality whose trustee, after proper notice, failed to act. In such case, a court of equity will not deny relief, and once having acquired jurisdiction will administer not only equitable remedies but such legal ones as may be required to make the relief complete. *Murphy v. Blair* (1859), 12 Ind. 184; *Faught v. Faught* (1884), 98 Ind. 470; *Albrecht v. Foster Lumber Co.* (1890), 126 Ind. 318, 26 N. E. 157; *Spidell v. Johnson* (1891), 128 Ind. 235, 25 N. E. 889; *Doherty v. Holliday* (1894), 137 Ind. 282, 32 N. E. 315, 36 N. E. 907; *Rob-*

*erts* v. *Leutzke* (1907), 39 Ind. App. 577, 78 N. E. 635; *Towns* v. *Smith* (1888), 115 Ind. 480, 16 N. E. 811. The court did not err in holding that the relators were authorized to institute the suit.

It is claimed by appellants that the complaint is insufficient because it fails to aver a demand on appellants before the suit was brought. No demand was necessary. The

6. law fixes the duties of the trustee, and a demand would be only a needless recital of the statutory requirement. §9575 Burns 1908, §5999 R. S. 1881; *Moore, ex rel.,* v. *State* (1876), 55 Ind. 360; *Foster* v. *State, ex rel.* (1899), 22 Ind. App. 471, 53 N. E. 1095; *Boyd* v. *State, ex rel.* (1908), 42 Ind. App. 243, 84 N. E. 350; *State* v. *Ensley* (1912), 177 Ind. 483, 97 N. E. 113; *Buchanan* v. *State, ex rel.* (1886), 106 Ind. 251, 254, 6 N. E. 614.

The advisory board act of 1899 provides that all contracts made in violation of the act shall be null and void (§9601 Burns 1908, Acts 1899 p. 150) ; that the expenditure of any fund, in whole or in part, to any account for which it was not appropriated by the advisory board, shall be deemed by the board a balance of such fund unexpended and in the hands of the trustee, for which he shall be liable on his bond. §9597 Burns 1908, Acts 1899 p. 150. Section 9598 Burns 1908, Acts 1899 p. 150, requires notice to bidders of the letting of all contracts (with minor exceptions), and, when a bid shall have been accepted, it requires the execution of a written contract, secured by the bidder's bond. An

7. officer of a municipal corporation cannot bind the corporation by any contract in which he is personally interested. *Noble* v. *Davison* (1912), 177 Ind. 19,

8. 96 N. E. 325, and cases cited. Township trustees cannot lawfully make gifts from public funds by paying for pretended services that were never rendered. *Board, etc.,* v. *Pike Civil Tp.* (1907), 168 Ind. 535, 81 N. E. 489.

Each averred breach of the bond involves the alleged vio-

lation of some provision of the advisory board act, or of other rule of law that rendered invalid the contract under which the expenditure of public funds was made, and such allegations are sufficient, *prima facie,* to constitute a cause of action for the recovery of funds so expended, and the court did not err in overruling the demurrers to the complaint.

An answer of general denial was filed by all appellants. Appellant sureties filed a separate answer to all the complaint, excepting the third, fourth and ninth breaches of the bond averred in the first paragraph, and the first, second, third and fourth breaches averred in the second paragraph. In this answer it is averred that Miller disbursed the several sums as alleged in the complaint, at the times, to the persons, and in the amounts, as therein alleged; that all of said expenditures were made for the use and benefit of the township, and for property, services, articles and supplies which were necessary, suitable and proper therefor, and the same were received, retained, used and enjoyed by the relators and other taxpayers of the township; that the expenditures were severally made with the knowledge of said taxpayers and without any objection on the part of any one of them, and with the knowledge and with the authority and advice of the advisory board; that said property, services, articles and supplies so received and used were of the full value paid therefor; that each of said payments was made by the trustee in good faith, without fraudulent intent on his part, and receipts were taken therefor; that no part thereof was retained by the trustee, or repaid to him, or to any person for him.

It is further averred that, during his term, the trustee, not less than thirty nor more than forty days before the first Tuesday in September of each year, made out a statement of the several estimates of the proposed annual expenditures, and the rates of taxation proposed for levy against the property of the township for the several funds, and posted and

published the same as required by law, and furnished each of the members of the board a copy of the statement, which contained a notice of the place of meeting of the board; that the board met and organized, and the trustee presented to the advisory board said statements in writing; and the board thereupon considered the statement of proposed expenditures and concurred therein, and thereupon fixed the rate of taxation within the township in accordance therewith, and duly levied the same on the property within the township, and thereby appropriated the same for said proposed expenditures, which included all the expenditures made as charged in the complaint; and said trustee did not make any expenditure from any fund on any account for which it was not appropriated. It is also averred that the trustee made no contract without giving the statutory notice, except in cases of urgent necessity, where immediate action was required to keep the public highways open for travel, and to keep the public schools in operation.

The answer further alleges that during the trustee's term it became necessary at various times to borrow money to meet necessary expenditures in providing schoolhouses and furnishing the same, and purchasing necessary supplies, and paying existing debts, and money was borrowed for such purposes, and was expended for the purposes for which it was borrowed, and all his actions with reference thereto, and which are set out in the complaint, were authorized and approved at the time by the advisory board. It is also averred that at each annual January meeting of the advisory board the trustee presented to the board his complete annual report, which contained each item of expenditure made, accompanied by corresponding verified receipts of persons who received the several payments, in which the article or service paid for was specifically stated; that the several sums receipted for were the exact sums received by the persons executing the vouchers, and no part thereof was retained by, or refunded to the

trustee, or had been agreed, directly or indirectly, to be refunded to the trustee, or to any other person; that said several reports were duly considered and approved by the board, and the approval thereof has never been set aside; that within ten days after the approval of each report the trustee filed a copy thereof, accompanied by the vouchers, in the office of the county auditor, who examined and approved each report within ten days after it was filed. The court sustained a demurrer to this answer, on the theory, as set out in the written opinion of the trial judge, which is made a part of appellee's brief, (1) that the action was one at law, and (2) that an equitable defense cannot be properly pleaded to a legal action.

Each of the above theories was erroneous. Suits of this character, whether by a taxpayer of a municipal corporation, or by a stockholder of a private one, are necessarily of equitable cognizance. As was said in *Land, etc., Lumber Co.* v. *McIntyre, supra,* concerning a plaintiff in a suit of this character: "He must proceed in equity or not at all, joining the corporation as a party in the capacity of trustee for all its members." The above language was quoted with approval by this court in *Zuelly* v. *Casper* (1903), 160 Ind. 455, 462, 67 N. E. 103, 63 L. R. A. 133. Even were the action one at law, an equitable defense was permissible. Section 56 of our civil code of 1852 provides that "the defendant may set forth in his answer as many grounds of defense * * *, whether legal or equitable, as he shall have." §352 Burns 1908, §347 R. S. 1881. It therefore remains to determine whether the answer states facts sufficient to constitute, in equity, a cause of defense to the portions of the complaint to which it is addressed.

It is claimed by appellants that in passing on the reports of the trustee, and confirming them, the board acted in a judicial capacity, and its finding has the effect of a judgment, which is impervious to collateral at-

tack. This theory cannot be upheld. The advisory board, in examining the report of the trustee, acted merely as a board of audit. *Western Construction Co.* v. *Board, etc.* (1912), 179 Ind. —, 98 N. E. 347; *Butler* v. *Board, etc.* (1912), 177 Ind. 440, 98 N. E. 185; *Sudbury* v. *Board, etc.* (1901), 157 Ind. 446, 62 N. E. 45.

In acting on allowances of claims against the township, the advisory board acts in an administrative capacity. It has no power to approve expenditures by the trustee on claims for services or supplies which the law does not authorize, and the approval by the board of an unlawful expenditure of public funds by the trustee can in no manner invest such expenditure with the sanction of the law. *Board, etc.,* v. *Heaston* (1896), 144 Ind. 583, 41 N. E. 457, 43 N. E. 651, 55 Am. St. 192; *Daily* v. *Board, etc.* (1905), 165 Ind. 99, 74 N. E. 977; *Indiana Trust Co.* v. *Jefferson Tp.* (1906), 37 Ind. App. 424, 77 N. E. 63.

The answer does not aver that the advisory board, in response to the estimates of the trustee, submitted at the annual meeting of the board, made any appropriation, but, on the other hand, must be construed as alleging that it did verbally concur in the trustee's estimates, and did, in writing, make a levy for the various funds for the ensuing year.

It is claimed by appellants that this levy was the only appropriation required under §9590 Burns 1908, Acts 1899 p. 150, which, among other things, provides that "such 13. levy shall be deemed an appropriation for the specific purposes for which such estimates are fixed." The statute must be construed as a whole. Section 9593 Burns 1908, Acts 1899 p. 150, §4, provides that the advisory board shall have full power to require any estimate, not sufficiently itemized, to be so itemized by the trustee, and to appropriate for any purpose a sum not greater than that estimated in the item therefor, except that by the unanimous action of the board, and not otherwise, an appropriation may be made for an item not contained in any estimate, or for a

greater amount than that named in any item of an estimate. The same section requires the trustee to present to the board an itemized statement showing, among other things, "the items, severally, to be charged against the township fund, including salaries, stationery, printing and records, and supplies to be furnished to the justices of the township, the trustee's compensation, and his office rent, where an office is authorized by the board, and any other items of expense payable from said fund." We are of the opinion that the statute requires the advisory board to act on the itemized statement of the trustee, and by written record make an itemized appropriation for the payment for supplies, services, etc., proposed in the trustee's estimate, and that the function of such appropriation cannot be performed by the tax levy; and we are further of the opinion that any contract for services or supplies, not included in such appropriation, is null and void. *State, ex rel.,* v. *Howard* (1910), 174 Ind. 358, 92 N. E. 115; *State, ex rel.,* v. *Anderson* (1908), 170 Ind. 540, 85 N. E. 17; *Waters* v. *State, ex rel.* (1909), 172 Ind. 251, 88 N. E. 67; *Peck-Williamson, etc., Co.* v. *Steen School Tp.* (1903), 30 Ind. App. 637, 66 N. E. 909; *Lund* v. *Board, etc.* (1911), 47 Ind. App. 175, 93 N. E. 179; *First Nat. Bank* v. *VanBuren School Tp.* (1911), 47 Ind. App. 79, 93 N. E. 863.

The principal question involved here, however, is that of the right to recover from the trustee an amount equal to the expenditures made by him for services and things on contracts which might have been legal had there been a proper appropriation therefor made by the board, or had the contracts been let to bidders after the giving of the statutory notice, but which, for lack of compliance with such legal requirements, are, by the terms of the statute, declared void.

In 1904, the advisory board made appropriations for expenditures in 1905. In 1905, 1906 and 1907, the advisory board wholly failed to make any appropriation whatever for teachers' salaries, or any other purpose. Each year, how-

ever, the board did make a levy for the ensuing year. During the three years for which no appropriations were made, more than $95,000 was expended by the trustee for teachers' salaries and other school purposes, repair of highways and other township purposes. It is the theory of appellees, and that theory was adopted by the court, that the trustee is liable to repay that entire amount, which, if recovered, would be the equivalent of exempting the taxpayers of the township from the payment of taxes for a period of three years. The recovery here was limited by the penalty of the bond in the sum of $20,000, but this would in nowise discharge the liability of the trustee for the remaining $75,000, if appellees' theory be correct. That theory is based on the proposition that any contract made by the trustee in contravention of the statute is void, and that any expenditure made pursuant to such contract is recoverable under the following clause in §9597 Burns 1908, Acts 1899 p. 150: ''The expenditure of any fund, in whole or in part, to any account for which it was not appropriated by said board, shall be deemed by the board a balance of such fund unexpended and in the hands of the trustee, for which he shall be liable upon his bond.''

On the other hand, appellants contend that where, as here, there is no charge of fraud on the part of the trustee, and where the services rendered and things supplied were necessary for the use of the taxpayers of the township, and were received and used or retained by them, and were of the full value paid therefor, a court of equity will deny a recovery.

Since the enactment of the act of 1899, *supra,* a contract made in violation of the statute is void, and a claimant cannot recover thereunder anything from the township, 15. even though the contract, on claimant's part, has been fully executed.

While the above rule may, in some instances, work a hardship on claimants against the township, it was evidently

deemed by the legislature that enacted the law a necessary measure for the protection of public funds from plunder by the combined efforts of dishonest contractors and officials.

It does not necessarily follow, however, that where, without fraud, a void contract between a public officer and another for furnishing necessary supplies to a municipality has been fully executed by both parties thereto, that the municipality may recover from the officer the money expended under such void contract. At common law the agreement of a married woman was not merely voidable but absolutely void; yet, certain duties on her part, arising out of the void contract, were recognized and enforced by courts of equity. Pomeroy, Eq. Jurisp. (3rd ed.) §104. In *Otis* v. *Gregory* (1887), 111 Ind. 504, 13 N. E. 39, it was held that a married woman who, without her husband joining, executed a mortgage on her real estate to secure the repayment of money borrowed for the purchase thereof, could not have her title quieted and the mortgage canceled, without repaying the borrowed money or acknowledging a lien therefor on the land. In so holding, the court declared that the mortgage was absolutely void, but based its action on the equitable maxim that "he who seeks equity must do equity." *Dwenger* v. *Branigan* (1884), 95 Ind. 221; *Cassell* v. *Lowry* (1904), 164 Ind. 1, 72 N. E. 640.

Another example of relief extended by a court of equity to persons who, in good conscience, are entitled thereto, because of situations resulting from part performance of void contracts is found where oral agreements have been made in real estate transactions. Pomeroy, Eq. Jurisp. (3rd ed.) §103. The question here involved has never been directly presented to this court.

In *Daily* v. *Board, etc.* (1905), 165 Ind. 99, 74 N. E. 977, a board of commissioners brought an action against a county assessor for the recovery of a sum of money paid him, as salary, in violation of a statute. In the course of the opinion

it was said: "It is undoubtedly true, as was suggested in the case of *Board, etc.,* v. *Heaston, supra* [(1896), 144 Ind. 583, 55 Am. St. 192], that in an action for money had and received the law will not imply a promise to repay unless *ex aequo et bono* the defendant ought to refund. * * * A county is not absolved from the obligations of common honesty where it is seeking the return of money paid under mistake, and we do not assert that the mere fact that a county may have had a technical defense to a demand will relieve it of the consequences of payment where, in the matter of substance, and as between man and man, it would be just for the defendant to retain the money." The question has been determined, however, in other jurisdictions. In *Frederick* v. *Douglas County, supra,* taxpayers of the county commenced an action against the county and other defendants to enjoin the further payment to one Grace, a lawyer, for legal services rendered the county, and to recover from him fees already paid out of the county treasury, amounting to about $2,000. The board of supervisors of the county, in January, 1895, without any legal authority whatever, employed Grace to defend the county against a number of tax suits. He commenced his services in February, 1895, which continued until the filing of the suit in November. The board was enjoined by the lower court from making further payments to Grace, and there was a judgment against the latter for the recovery of the amount already paid him. The services rendered the county by the attorney were valuable, and worth the amount received from its treasury. On appeal to the supreme court, the injunction decree was affirmed, but the judgment for the recovery of the fees already paid was reversed. The court said: "Mr. Grace's services ran through a number of months, and he undoubtedly has fully earned all the money which has been paid him. During all this time the plaintiff and his fellow taxpayers remained silent, and allowed the services to be rendered and the money to be paid. They took no action until the latter part of No-

vember, 1895. Then they came into a court of equity, and asked for the stoppage of all payments in the future, and to this they were undoubtedly entitled. But he who comes into a court of equity must do equity. Could it, under any view of the circumstances, be said to be equitable to compel Mr. Grace to pay back the money which he received for long and valuable labors, rendered honestly and in good faith, the benefit of which the corporation has received, and concerning which the taxpayers  *  *  *  were, or ought to have been, fully informed during their entire progress? Were a court of equity to make this judgment under the circumstances, we should regard it as having become an engine of oppression, rather than an instrument of justice.  *  *  *  *Mayor, etc.*, v. *Huff* [1878], 60 Georgia 221.''

*Flowers* v. *Logan County* (1910), 138 Ky. 59, 127 S. W. 512, 137 Am. St. 347, was an action by the county against an officer thereof for the recovery of public funds expended in a manner contrary to a statute. No fraud was charged, and the county received the benefit of the expenditures in question. In holding that the county was not entitled to recover, the court said: ''We held in *Boyd County* v. *Arthur* [(1904), 118 Ky. 932, 82 S. W. 613] that the attempted delegation of power of the court and jurisdiction over the public roads by the fiscal court to its several members was contrary to the statute, and on appeal by the county judge we held that the orders should be reversed and set aside; furthermore, we held that injunction would lie to prevent the irregular application of the public money. We are yet as firmly of the opinion there expressed as when it was written. Further observation has confirmed the unwisdom, the impolicy, the illegality of the course pursued by those fiscal courts. But where the fiscal court and the taxpayers have stood by for many years and allowed the public money to be expended by that kind of proceeding, and it has actually been applied to the purposes for which it was raised and appropriated, it is quite a different question whether

the county will be permitted to recover the money. The vice in the proceeding was not in doing something not authorized by, or forbidden by, the law, but was doing that which was allowed in a manner not authorized by law. If the thing done had been illegal, or not warranted by law, however beneficial it might have been, the public ought not to be estopped to deny the validity of the expenditure; or, where the thing is authorized, but it is proposed to do it in an unauthorized manner, upon seasonable complaint those charged with doing the thing will be compelled to execute it as the law directs, and prohibited from doing it otherwise. But where the thing is authorized to be done, and is done by the party charged with doing it, but done in a manner contrary to that directed by the statute, the court will not compel the official to pay back the money and let the public continue to enjoy the benefits of its expenditure. If it is made to appear that the expenditure was in good faith, and the public has got that which it was entitled to, good conscience forbids the recovery. The law, therefore, denies it.'' In that case it was held, however, that the burden was cast on the officer to prove that the county received the benefit of the irregular expenditures.

We think the reasoning is sound in both the Wisconsin and Kentucky cases. Appellees have failed to cite any authority which supports their contention, and we have been unable to find any. The clause in §9597, *supra,* relied on by appellees, when considered with reference to the other provisions of the act, cannot justify their contention.

In our opinion, the statute, considered as a whole, does make the trustee *prima facie* liable for the expenditure of any fund to an account for which it was not appropriated, or in a manner in violation of any provision of the act, and to escape any such liability the burden is on him of showing that the contract under which public money was expended was with one legally authorized to enter into it, and that the expenditure was made for an object in

itself lawful, and that whatever was paid for was necessary and of a value equal to the expenditure, and was received and used, or retained by the township, and that the transaction was without fraud. *Flowers* v. *Logan County, supra,* and note in 137 Am. St. 347, 362; *Frederick* v. *Douglas County, supra; Webster* v. *Douglas County, supra.*

But we cannot sanction the theory that taxpayers may stand by for a long period of time and, without protest, permit a trustee, in good faith, but through ignorance of law, to expend public funds for lawful and necessary objects, but without complying with all the statutory requirements, and then, months after the expiration of his term, demand the restoration to the treasury of the funds so expended, the taxpayers in the meanwhile retaining, or having used the proceeds of the expenditures. From such doctrine, conscience naturally recoils. Originally, courts of equity interposed their jurisdiction only to enforce the requirements of conscience and good faith. Pomeroy, Eq. Jurisp. (3rd ed.) §398. The maxim "he who comes into equity must come with clean hands" is a universal rule guiding and regulating the action of chancery courts. This rule bars the granting of any relief to appellees, in respect to the matters averred in the separate answers of the sureties, for the taxpayers come into a court of equity with hands laden with the fruits of the trustee's purchases, while they pray a decree for the restoration of the purchase price thereof. To grant such prayer would indeed, as said by the supreme court of Wisconsin, make the court "an engine of oppression rather than an instrument of justice." Pomeroy, Eq. Jurisp. (3rd ed.) §397; *Frederick* v. *Douglas County, supra.* In enacting the advisory board act, the evident purpose of the legislature was the promotion of an honest administration of township affairs.

It is inconceivable that it was the legislative intent to promote official integrity by granting to the taxpayers letters of reprisal authorizing them to prey on the earnings of the

officer and sureties, by retaking the price paid for necessaries honestly purchased for, and used by them. Such design is as abhorrent to good conscience as were the bills of attainder prohibited by our Federal Constitution, and the language of the act neither requires nor justifies the imputation of such legislative intent. ' The separate answer of the sureties stated a cause of equitable defense, and the court erred in sustaining the demurrer thereto.

All the appellants filed an answer in two paragraphs. The first was a general denial, and in the second the same facts were alleged as were set up in the separate answer of the sureties, but it differs from that answer in that it was addressed to the entire complaint.

The lower court sustained a demurrer to this second paragraph, and appellants complain of such action. There was no error. Among the breaches complained of were certain payments of public funds, amounting to $309, for school supplies furnished by a business firm of which the trustee was a member. It may be stated as a general proposition that the township can never incur a liability for goods purchased by the trustee from himself, though there be a compliance with all the provisions of the advisory board act. Public policy forbids it, and a criminal statute prohibits him from entering into contracts in which he is personally interested under a penalty of a fine, and imprisonment in the state prison. §2423 Burns 1908, Acts 1905 p. 584, §517; *Noble* v. *Davison* (1912), 177 Ind. 19, 96 N. E. 325, and cases cited.

An equitable defense cannot be predicated on the violation of a criminal statute. "He that hath committed iniquity shall not have equity." Fetter, Equity 37-40.

Whether or not, under some extraordinary emergency, a trustee might supply a temporary necessity, and thereby create a township liability, is not presented here for decision. No such emergency is pleaded. *McNay* v. *Town of Lowell*

(1908), 41 Ind. App. 627, 84 N. E. 778; *Eastman* v. *State* (1887), 109 Ind. 278, 10 N. E. 97, 58 Am. Rep. 400.

The complaint also alleges that he paid himself for rental and use of his own property, and paid for services that were never rendered. Taxpayers are not estopped from recovering funds expended under contracts in which the trustee was interested, and may also recover where the payments were made for purposes not warranted by law. *Board, etc.,* v. *Pike Civil Tp.* (1907), 168 Ind. 535, 81 N. E. 489; *Daily* v. *Board, etc.* (1905), 165 Ind. 99, 74 N. E. 977; *Board, etc.,* v. *Heaston* (1896), 144 Ind. 583, 41 N. E. 457, 43 N. E. 651, 55 Am. St. 192; *Caldwell* v. *Board, etc.* (1908), 41 Ind. App. 40, 83 N. E. 355; *McNay* v. *Town of Lowell, supra; Independent School District, ex rel.,* v. *Collins* (1908), 15 Idaho 535, 98 Pac. 857, 128 Am. St. 76. The answer was addressed to the entire complaint, and for the reasons above stated was insufficient.

The cause was tried on the issue formed by the general denial. There was a special finding of facts, and conclusions of law stated thereon. The facts found were substantially as alleged in the separate answers of the sureties.

The court concluded, on the facts found, (1) that Jackson township was entitled to recover from the trustee and his sureties, for the use of the township fund, $1,465.42, and for the use of the road fund, $1,776.93; and (2) that Jackson school township was entitled to recover from the same parties, for the use of the tuition fund, $9,750.30, and for the use of the special school fund, $7,007.35 —a total recovery of $20,000, and judgment was rendered accordingly.

Appellants separately and severally excepted to each conclusion of law, and assign error therefor. The conclusions are erroneous, except as to the right of recovery for expenditures made for supplies found to have been furnished by the firm of which the trustee was a member; also for office rent and shedding wagons, found to have been paid to him-

self for the rent and use of his own property, and for car fare and traveling expenses, found to have been paid to himself, and for $60, found paid for services not rendered. *State, ex rel.,* v. *Board, etc.* (1897), 147 Ind. 235, 46 N E. 525, and cases cited; *Zuelly* v. *Casper* (1903), 160 Ind. 455, 67 N. E. 103, 63 L. R. A. 133; *Daily* v. *Board, etc., supra.* In so holding, however, it is in nowise intended to limit in any respect the former decisions of this court and the Appellate Court, construing the advisory board act. On the other hand, these decisions have interpreted the act in accordance with the spirit of its enactment, which, as before stated in this opinion, was designed to protect the taxpayers from the waste of the public funds. Equity follows the law, and courts of chancery have not the power to limit the force of legislative enactments. Even if such power were given, we would not incline to any suggestion to weaken the efficiency of this statute which was passed to correct evils well known and of long standing.

The court overruled appellants' motion for a new trial, which, among other things, alleged that the amount of recovery was too large. In this action the court erred. On the facts found, the judgment was excessive.

Appellants' brief was filed January 20, 1911. An act approved March 7, 1911 (Acts 1911 p. 693), entitled "An act for the relief of township trustees in certain cases," is cited in appellants' brief as affording a defense to appellants. Judgment was rendered in this cause long before the act in question was passed.

In this appeal, the rights of the parties, under the judgment appealed from, were fixed by the law as it stood when the judgment was rendered. These rights were vested, and could not be impaired by subsequent legislation. Constitution, Art. 1, §24; *Johnson* v. *Gebhauer* (1902), 159 Ind. 271, 64 N. E. 855, and cases cited; *Johnson* v. *Board, etc.* (1886), 107 Ind. 15, 31, 8 N. E. 1, and cases cited. Whether, on another trial of the cause, appellants

may invoke the aid of the provisions of the statute, is not here considered.

Judgment reversed, with instructions to grant a new trial, and overrule the demurrer to the separate answer of the sureties, and for further proceedings not inconsistent with this opinion.

## CONCURRING OPINION.

MYERS, J.—I concur in all that is said in the prevailing opinion on the subject of adherence to the requirements of the township advisory board act, and the necessity therefor as sound and healthful, and it is for the reason that the lines on which the prevailing opinion travels must of necessity emasculate that statute, that I am impelled to state my reasons for concurrence in the reversal of the judgment, but on entirely different grounds.

This action is instituted by taxpayers in the *name* of the *State* on *their own* relation, after the expiration of the term of office of a township trustee, and the induction of his successor into office, and after thirty days' notice to the incumbent trustee and the advisory board, and their failure to institute a suit against the former trustee and his bondsmen "in the name of the State, to recover each of the aforesaid sums for the use of said township," the funds specified in the notice being various funds of the civil and school townships. The sufficiency of the complaint is challenged by demurrers, both on the ground of the complaint not stating facts sufficient to constitute a cause of action, which challenge the right of the relators to sue, and whether they sue in their individual, or in a representative capacity (*Kinsley* v. *Kinsley* [1898], 150 Ind. 67, 49 N. E. 819; *Farris* v. *Jones* [1887], 112 Ind. 498, 14 N. E. 484; *Sinker* v. *Floyd* [1885], 104 Ind. 291, 4 N. E. 10; *Wilson* v. *Galey* [1885], 103 Ind. 257, 2 N. E. 736; *Pence* v. *Aughe* [1885], 101 Ind. 317; *Toner* v. *Wagner* [1902], 158 Ind. 447, 63 N. E. 859);

also, by direct assignment of want of capacity of relators to sue.

The position of appellants is that §6 of the township reform act (Acts 1899 p. 150, §9595 Burns 1908) only authorizes an advisory board or taxpayer to sue during the term of office of a trustee, for the reason that he cannot sue himself, if in default, or if a successor or advisory board refuses to sue after notice, a taxpayer may, but that in such case he does not sue on his own relation, but that the suit must be in the name of the State for the use of the civil or school township, as the case may be, or if he could sue as an individual, it could not be a suit at law on the bond, but a suit in equity in analogy to bills in equity by shareholders in a corporation, to conserve its funds.

The original act of 1899 (Acts 1899 p. 150, §9590 *et seq.* Burns 1908) arose out of a wide-spread demand, if not a necessity, for such legislation, and is as important now as when enacted. By §4 of said act (§9593 Burns 1908) an annual meeting of the township advisory board is provided for, at which the trustee is required to furnish a detailed and itemized statement in writing of his estimated expenditure on every account for the ensuing year. The advisory board is authorized to appropriate "for any purpose a sum not greater than that estimated in the item therefor, except by the unanimous vote of the board, and not otherwise, an appropriation may be made for an item not contained in any estimate, or for a greater amount than that named in any item of an estimate." This section clearly contemplates appropriations from funds on hand, or funds which will be realized, and available from the tax levies, without creating a debt or deficit.

By §8 of said act, as amended in 1901 (Acts 1901 p. 415, §9597 Burns 1908), it is provided that "the expenditure of any fund, in whole or in part, to any account for which it was not appropriated by said board, shall be deemed by the

board a balance of such fund unexpended in the hands of the trustee, for which he shall be liable upon his bond.''

It will thus be seen that §8 is closely related to and supplements §4, in requiring appropriations from available funds only, in order to authorize payment, and declaring the result, the liability, if the requirement is not observed.

We next come to §6 of said act, as amended in 1901 (Acts 1901 p. 415, §9595 Burns 1908). As originally enacted it dealt wholly with proceedings, emergencies and requirements, not covered by the annual meetings, and expenditures not included in the "existing estimates and levy."

If the emergency is found to exist, after notice to all, an appropriation may doubtless be made if there are funds available, but the subject of the section, as well as its object specifically, is the borrowing of money to meet emergencies, and creating a debt.

Then follows a provision that "in no event shall a debt of the township, not embraced in the annual estimates fixed and allowed, be created without *such* special authority, and any payment of *such* unauthorized debt from the public funds shall be recoverable upon the bond of the trustee in a suit, which it is hereby made the duty of said Board to institute and prosecute *in the name of the State for the use of said township.* And said Board is hereby empowered to appropriate, and the township trustee shall pay out of the township funds a reasonable sum for attorneys' fees for such purpose. And if the Board on a written demand of any taxpayer, fails for thirty (30) days to bring *such* suit, then *such* or any other tax payer may bring the same, *in the name of the State, for the use of the Township.*'' (Our italics throughout this opinion.)

The act of borrowing segregates that debt from the annual appropriations, and all others, and the statute requires a levy at the next annual session "to cover and pay the debt so created.''

The general provision of §8, in declaring that all unappropriated moneys shall be deemed "a balance of such fund unexpended, in the hands of the trustee," etc., covers any case except a payment of a debt created under §6, and there was no necessity for that sweeping legislative enactment, if appellees' theory that actions on any account may be brought under §6. This is the more apparent when we come to the amendment of §6 in 1901, which is identical with the original §6 down to the proviso, by which it is enacted that if at any annual or special meeting, etc., it shall be found "indispensably necessary" to construct a school building, "the cost of which * * * will be in excess of the sum available therefor out of the annual levy," then township warrants or bonds, the character of which is described, may issue. The amendment consists in providing for meeting emergencies at any "annual or special meeting," and, by reason of the possible inadequacy of one year's levy to meet the obligation, extending it over a term of years, and authorizing a special levy to meet the obligation. The fund arising from such a borrowing would not be in the same class, whether provided at a regular or special meeting, because it is not an appropriation in the general or specific sense, that the annual levy and appropriations are, but is in a special class, in that it is exactly what the statute indicates and specifies as an emergency loan, and an appropriation therefor, and not being in the general class, it is not covered by the general provisions of §9597, *supra,* with respect to the disbursement of the nonappropriated funds, and hence the necessity for the provisions in regard to suit for payment of such debt, if it shall not have been authorized. The only debt a township is authorized to create is under §9595, *supra,* and the only debt authorized by that section is an emergency debt, and it must be provided for by a special levy the next year, or extending over a term not to exceed five. In case of schoolhouses,

the statute specifically provides that the trustees ''shall apply such annual tax to the payment of such warrants or bonds each year,'' and it is a fair construction, that the fund created to meet any loan authorized by the statute is also a setting aside of the fund for that purpose only.

If the provisions of §9597, *supra*, could have any relevancy to the fund created by a loan under §9595, *supra*, it would be in the diversion of the fund to some other purpose. The suit, however, is grounded on said §9595, and as that is the theory of the complaint, it must be good on that theory. *Oölitic Stone Co.* v. *Ridge* (1908), 169 Ind. 639, 83 N. E. 246, and cases cited; *Mescall* v. *Tully* (1883), 91 Ind. 96.

The language of the act itself is plain, and needs no construction. It is, whether the suit is brought by the advisory board or by a taxpayer, it shall be brought ''in the name of the State, for the use of the township.'' We perceive no reason for a suit at the instance of the advisory board, except against a trustee while in office, because of the payment of a debt not authorized to be created under that section. We say this, because it will not be presumed that the officer will sue himself while in office, and because the statute provides that the advisory board shall, or on its failure a taxpayer may, bring the suit. But giving the clause of the statute the broadest application, and treating it as broad enough to authorize a suit for the illegal disbursement of any fund during the term of office, we still have the reason for the suit being brought by the advisory board, or by a taxpayer on failure of the former, but in such case, how shall it be brought? The statute points out how it shall be brought. It may not be brought on the relation of a taxpayer under §253 Burns 1908, §253 R. S. 1881, providing that ''actions upon official bonds, payable to the State, shall be brought in the name of the State of Indiana, upon the relation of the party interested,'' for the reason that a taxpayer is not ''a party interested,'' within the meaning of the

statute: that is, as a part of the public he has no interest different from all other taxpayers. In saying this we do not overlook the case of *State, ex rel.,* v. *Holt* (1904), 163 Ind. 198, 71 N. E. 653. That action was one by the State by an individual as relator and the same person as an individual. The grounds of demurrer to the complaint were the same as here, except that the demurrer for want of legal capacity to sue was that plaintiffs neither jointly nor severally had legal capacity to sue. It was clearly held, and rightly, in that case, that Stuart as an individual could not sustain an action on the bond: (1) Because the statute forbids a personal action, even by a taxpayer on the bond; (2) because as an individual he has no separate and divisible interest in the subject-matter, just as appellees here, as taxpayers have not. The complaint was held bad, because as relator he was suing for the benefit of all the people in the county, and as an individual, for his personal use for expenses incurred.

True, it is there said that the suit was properly brought by Stuart as a taxpayer relator, and *Zuelly* v. *Casper* (1903), 160 Ind. 455, 67 N. E. 103, 63 L. R. A. 133, and *Kimball* v. *Board, etc.* (1904), 32 Ind. App. 377, 66 N. E. 1023, are cited in support of the proposition. In the first place, in the Zuelly case the action was not on the bond, and not as relators, but as individual taxpayers, in behalf of the county; and in the second place, in the case of the same parties as relators, in a suit not on the bond *(State, ex rel.,* v. *Casper* [1903], 160 Ind. 490, 67 N. E. 185), it was held that they could not maintain a suit as relators, but might do so in their own names, and that as the State had no interest, it was not a proper plaintiff, and the complaint was not aided by the taxpayers being joined as relators. In the Kimball case, certain citizens of Franklin county brought suit for the recovery of money allowed and paid through inadvertence of the commissioners, for the use of the county, and retained from the fund recovered by their efforts the expense of the litigation, and the board brought suit

for the money retained. It was held, and properly, that the suit being of an equitable character, the defendants were entitled to reasonable reimbursement.

It will thus be observed that neither of those cases is authority on the proposition that a taxpayer may bring a suit on his own relation on the bond of a public officer under §253, *supra.* If they decide anything on that subject, it is that he may not do so. Section 5962 Burns 1908, Acts 1899 p. 343, §45, provides in case of payments of money out of the county treasury, suit may be brought *"in the name of the State of Indiana on the relation of the board of commissioners,"* or on its failure upon thirty days' notice, and failure of the board of commissioners to sue, "any citizen or taxpayer * * * may * * * institute such suit in the name of the State of Indiana, *on his own relation* for the benefit of the county."  There is express authority for suits on relation of citizens or taxpayers, but the cases cited are not authority for so doing, and it is not by virtue of §253, *supra,* in relation to suits on official bonds, but by virtue of said act.

Again, by §6010 Burns 1908, Acts 1897 p. 187, §6, any citizen or taxpayer, after sixty days' demand on the board of commissioners "may in his own name upon giving bond for the costs, prosecute and maintain for the use and benefit of such county the proper suit for the recovery of any illegal, unwarranted or unauthorized allowance made by such board," etc.  But when we come to the statute under consideration, we have an entirely different, and specific declaration as to who may bring such suits, with respect to township funds, and how, and the fact of the difference in the statutes is not without force, when we reflect on the difference in the provisions, and on the further fact that the township advisory board act is the later statute.

After the expiration of the term of office of a trustee, the presumption is that his successor will bring the proper suit.  But it is claimed that the presumption is overcome

in this suit by the fact of the failure and refusal of the trustee on demand, to bring the suit, and that the township ought not to be without remedy.

Conceding for the purpose of a remedy, that there ought to be a right to bring a suit, and that a case is thereby made authorizing a taxpayer to maintain a suit on the bond, the question is, how shall he bring it?

By parity of reasoning, he cannot bring a suit at law on his own relation under §253, *supra,* because he is not "a party interested." The State is not interested, and he has no individual interest, and he may not bring a suit on the bond on his own relation, for that reason, but above and beyond all, the statute points out just how he may bring it, and that is "in the name of the State for the use of the Township."

In this case, the allegation is that "they file this suit for the use and benefit of the said Civil and School Townships of Jackson, both of which are made defendants, that a recovery may be had in their favor."

We have had a statute since 1865 (§6664 Burns 1908, §4534 R. S. 1881) providing that "suits brought on behalf of the schools of any township, town or city, shall be brought *in the name of the State of Indiana for the use of such township, town, or city"*—the same language used in the statute before us. And in this case, funds of both the school township and the civil township are alleged to have been paid out in large sums, in violation of the law.

The case of *Hadley* v. *State, ex rel.* (1879), 66 Ind. 271, is directly in point. The reporter has taken liberties in entitling the cause, which are not warranted. It might seem from the title that the cause was instituted by a relator, but an examination of the original record, as well as the language of the opinion, discloses, that the action was "The State of Indiana for the use of the School City of Richmond," and was based on §6664, *supra.*

In *State, ex rel.,* v. *Wilson* (1888), 113 Ind. 501, 15 N. E.

596, it was held that either a township trustee or the civil township may institute a suit on a bond, under the general statute, on the express ground that the fund is the fund of the township in the one case, and the trustee, as trustee of an express trust, in the other, is entitled to its possession, and to sue as "a party interested."

It is pointed out in that case that it was held in *Johnson* v. *Harris* (1834), 3 Blackf. 387, 26 Am. Dec. 424, that a township trustee could not sue on the bond of his predecessor, but it is held that, under the general statute, he is entitled to sue as a beneficiary and a party in interest.

The distinction between the two corporate entities, the civil township and the school township, has been so often declared that it is unnecessary to cite authorities, or do more than to point out that as to school matters the suit must be brought against or by the school corporation, or for its use, and as to other matters, against or by or for the use of the civil township, and as the statute is specific (§6664, *supra)* that suits brought on behalf of the schools shall be brought "in the name of the State of Indiana for the use of such [school] township, town, or city," and the language of the act in question is practically the same. That must be taken to be the manner in which, at least as to the school funds, and by the force of the statute, and under the conditions here presented, suits in behalf of the civil township must be brought, because of the plaintiffs not being within the general statute as relators, and to the same effect is *State, ex rel.,* v. *Karr* (1906), 37 Ind. App. 120, 76 N. E. 780.

A suit brought on the relation of a taxpayer is not a suit in the name of the State of Indiana, for the use of the township, and as to school funds, an action on relation of a taxpayer is unauthorized, and even if as to the civil township a suit will lie on the relation of a taxpayer under some conditions, the conditions are not here, and such a suit as is

here sought to be maintained must be in the name of the State, for the use of the township.

The difference is a marked one, and its purpose is not far to seek. As a relator, a taxpayer is liable for costs, while under this statute, by a suit in the name of the State, there is no liability for costs, and there is the broadest invitation to taxpayers to investigate as such, without incurring liability for costs.

Under §6010, *supra,* applicable to counties, taxpayers are not let in to prosecute suits in their own names, without giving bonds for costs, thus discouraging the taxpayer, while §5962, *supra,* a later act, authorizes an allowance for bringing and prosecuting suits, thus encouraging investigation, without incurring liability, and the act in question is still later, and extends further encouragement, by requiring suits in the name of the State.

In my judgment the suit cannot be maintained by appellees as relators in any event under this statute, either as to civil or school corporations, and they cannot maintain suit on the bond as relators, under the general statute, for lack of such interest as that statute means and intends. Whether suit might be brought in equity by taxpayers in analogy to bills in equity by shareholders of a corporation, we do not determine. It is sufficient to say that, under this statute, whether the provision for suit by an advisory board or taxpayer applies only to the fund borrowed under §9595, *supra,* or to any fund under the general provision of §9597, *supra,* it must be brought in the name of the State, for the use of the proper and interested corporation.

As no suit can be maintained by them as relators as to the school township funds, and if it could be maintained as relators as to the civil township funds, one of two things must be true: either that it is an action wholly by the civil township, or that it is an action by them as relators for the civil township, and as individuals as to the school township, and

in either event the complaint is bad, because they do not bring the suit in the same right or capacity, one being representative and the other individual. *State, ex rel.,* v. *Holt, supra; Toner* v. *Wagner* (1902), 158 Ind. 447, 63 N. E. 859; *Neal* v. *State, ex rel.* (1874), 49 Ind. 51.

The complaint makes no claim of payment of any debt for borrowed money, or warrant or bond issued for construction of any schoolhouse, which was not authorized by the advisory board under §9595, *supra.* This is the more apparent because, by the complaint, it is sought to charge the trustee not only for moneys not appropriated, but for the expenditure of moneys paid for supplies, material and labor, without taking bids for such supplies and work. A case is therefore not made under that section, and the suit cannot be maintained under that section, which is the theory of this complaint

Even under §9596 Burns 1908, Acts 1899 p. 150, §7, a suit cannot be maintained as to the school township by taxpayers as relators, and as to the civil township, it must be in the name of the State for the use of the township. I am wholly unable to concur in the views of the prevailing opinion, in the application of equity rules to a strictly legal question, under an express prohibition of the statute, on the ground of the contract being executed. There may be defined distinctions between executed and executory contracts, but I am unable to see the application of the doctrine to the case of an absolutely prohibited and unlawful thing by statute.

It is expressly provided in §9597, *supra,* that "the expenditure of any fund, in whole or in part, to any account for which it was not appropriated by said board, shall be deemed by the board as a balance of such fund unexpended and in the hands of the trustee, for which he shall be liable on his bond."

The expenditures alleged to have been made by the trustee in this case were alleged to be made either without appropri-

ation, or without giving the required notice to make the expenditure, in violation of these express provisions.

Under such circumstances the provision that such expenditure shall be deemed "a balance of such fund unexpended and in the hands of the trustee, for which he shall be liable on his bond," that is, shall be liable therefor on his bond, the same as if it had not been expended, and he had failed to account for and pay it over to his successor, the statute clearly fixes this liability.

In the prevailing opinion it is held that even if the trustee makes expenditures, without appropriation by, or not authorized by the advisory board, he may defend on his bond, if he shows that the public money was expended on a contract with one legally authorized to enter into it, and that the expenditure was made for a subject in itself lawful, and that whatever was paid was necessary, and of a value equal to the expenditure, and was received and used or retained by the township, and that the transaction was without fraud. The holding is not based on the act of 1911, for the relief of township trustees (Acts 1911 p. 693), but what is termed relief extended by a court of equity. This holding is in direct conflict with the provisions of §9597, *supra*. That act provides that such expenditures shall be "deemed a balance of such fund unexpended in the hands of the trustee."

The provision expressly excludes the defense that the alleged illegal expenditures were proper ones, because the public moneys were paid out on account of a public purpose, and for which the advisory board had made no appropriation, or for work done or supplies furnished contrary to express statutes. But should the provision of the statute work a hardship to individuals, that by no means warrants the violation of a plain and emphatic provision thereof.

The liberty of the citizen, and his security in all his rights, depend, in a large degree, on the rigid adherence to the provisions of the Constitution and the laws, and their faithful

performance. If courts, to avoid hardship, may disregard and refuse to enforce their provisions, then the security of the citizen is imperiled. Then the will of the judge would usurp the place of the Constitution and the laws, and the violation of one provision is liable speedily to become a precedent for another, perhaps more flagrant, until all constitutional and legal barriers are destroyed, and no one is secure in his rights. Nor are we justified in resorting to a strained construction, or astute interpretation, to avoid the intent of the legislature as expressed in statutes, even to relieve against individual or local hardships. While courts have the power to interpret statutes, and determine as to their constitutionality, they have no power to amend or repeal them. If unwise or hard in their operation, the power that adopted, can repeal or amend, and remove the inconvenience, if any. The power to do so has wisely been withheld from the courts, their function being to enforce the laws as they find them enacted.

To say that if a contract has been entered into, or has been entered into and performed, between a contractor and a township trustee, the contractor may not recover, and is without remedy, but that if the trustee has paid the contractor, he is entitled to credit, will destroy the statute.

It is said in *Magniac* v. *Thomson* (1853), 56 U. S. 281, 299, 14 L. Ed. 696: "That wherever the rights or the situation of the parties are clearly defined and established by law, equity has no power to change or unsettle those rights or that situation, but in all such instances the maxim *equitas sequitur legum* is strictly applicable. * * * Equity may be invoked to aid in the completion of a just but imperfect legal title, or to prevent the successful assertion of an unconscientious and incomplete legal advantage; but to abrogate or to assail a perfect and independent legal right, it can have no pretension. In all such instances, equity must follow, or in other words, be subordinate to the law."

In a case in our own court it is said: "Equity has no jurisdiction of its own."

In *Hart* v. *City of New York* (1911), 201 N. Y. 45, 55, 94 N. E. 219, it is said: "It is, however, urged that the principles which have been stated and referred to do not apply to an executed contract where the municipality does receive and is enjoying the benefit of the work done or materials furnished under the contract. It is very clear that such is not the law applicable to the facts presented here. This is not a case where there has been mere irregularity in letting the contract, but is a case where, if I am correct, the municipal authorities have attempted to let a contract which was not only not authorized, but which was in violation of the law and ordinances which govern them and which was utterly and jurisdictionally illegal. The action is explicitly based on contract and not brought to recover on a *quantum meruit,* and I regard it as well settled that it cannot be maintained simply because the contract has been executed, some of the decisions here cited having reference even to actions based on a *quantum meruit.*" Citing cases.

I am unable to see the application of cases arising under statutes somewhat similar to our own, but in which our own has gone far beyond those statutes, of the cases cited in the prevailing opinion.

In *Flowers* v. *Logan County* (1910), 138 Ky. 59, 127 S. W. 512, 13 Am. St. 347, it was said: "The vice in the proceeding was not in doing something not authorized by, or forbidden by the law, but was doing that which was allowed, in a manner not authorized by law."

In the case of *Riverside County* v. *Yawman & Erbe Mfg. Co.* (1906), 3 Cal. App. 691, 86 Pac. 900, it was held that the section of the statute sought to be invoked did not contemplate recovery of property which a public corporation had received and retained, and that "the right there sought to be conferred was to recover money paid without authority of law."

*Frederick* v. *Douglas County* (1897), 96 Wis. 411, 71 N. W. 798, was a case of the employment of an attorney by a taxpayer to restrain the illegal payment of money by the county and its officers, when there was a district attorney whose duty it was to institute such suit, and the question was whether the secondary attorney so employed could be compelled to pay back a sum which he had been paid, and which was the fair value of the services rendered in protecting the fund, and to enjoin payment for a further sum. The question arose over the employment of the attorney to do what it was the duty of the district attorney to do, and the further payment was prohibited, but recovery of the money paid was denied, on equitable grounds. In this case, the employment of the attorney was unauthorized, but not expressly prohibited, as in the case at bar.

There is a marked distinction between cases in which an act is simply unauthorized, or an authorized act is done in an unauthorized manner, and one in which the thing is absolutely prohibited by a positive statute, and in which statute there is also a positive mandate against credit being given to the officer, and a like mandate as to bringing suit for its recovery if credit is claimed or has been given the officer, and that distinction runs through all the cases, including those cited and relied on in the prevailing opinion, as I read them. Many of the cases founded on equitable estoppel are those of municipal corporations, as distinguishable from public corporations, such as counties and townships, as arms of the state government, and others have arisen without that distinction being noted, or in exceptional cases, and without noting the distinction between acts prohibited by statute or in violation of public policy and those not so prohibited. *Moss* v. *Sugar Ridge Tp.* (1903), 161 Ind. 417, 425, 68 N. E. 896; *Schipper* v. *City of Aurora* (1889), 121 Ind. 154, 22 N. E. 878, 6 L. R. A. 318.

But we have a clear and explicit statute, declaring the

legal effect of given conditions; and the effect of the prevailing opinion, as I see it, is to amend it out of existence. It is vain to say that we do not intend a construction to have an effect which it inevitably has. When a statute declares a thing to be unlawful, unless done in a certain way, or under certain authorities, it can go no further, but the thing so done is unlawfully done. It is in violation of the law. It is just as unlawful as if it were declared a crime. The thing itself is unlawful, and it is not a question of doing a lawful thing in an irregular or unlawful manner. There is no room for the interposition of an equitable defense. If this is not true, the statute itself is of no force or validity. If the rule is as declared in the prevailing opinion, the enactment of 1911 (Acts 1911 p. 693) was wholly unnecessary to extend relief.

But the fact that it was enacted is a legislative construction that the act will not bear the interpretation given to it by the prevailing opinion, as well as a declaration of the intention to preserve the act in its integrity by restricting it to past violations.

It seems to me a strange inconsistency to say that a party who has furnished the property which a township needs and retains, and in whom the equity is, if there be one, may not recover on the contract, or its value, while the trustee who has paid for it, in violation of the statute and his express duty, may be allowed for it. Under former decisions of this court, the contractor could not recover, and the statute is specific, that it should be "treated as money in his hands," etc., a most sweeping declaration, and it was undoubtedly the purpose in the enactment of the act of 1911, *supra*, to provide relief for past transactions, as to which there otherwise could be no relief.

In *Lee* v. *York School Tp.* (1904), 163 Ind. 339, 71 N. E. 956, it was held, under a statute requiring contracts with teachers to be in writing, and declaring "that no action shall

be brought upon any contract not made," etc., in writing, that no recovery could be had on the *quantum meruit,* citing numerous cases.

In *Boyd* v. *Black School Tp.* (1890), 123 Ind. 1, 23 N. E. 862, decided under the act of 1881, in an action for supplies furnished a township trustee under that act, it was held that there could be no recovery on the contract, but a recovery was sustained on the ground of the receipt and retention of necessary supplies.

In *Moss* v. *Sugar Ridge Tp., supra,* under the act there in question, a recovery was denied for highway work, contracted by a trustee in violation of the statute. In that case the doctrine of the Boyd case and others was invoked, in which beneficial contracts had been made, but the court points out the distinction between cases of contracting in a manner not prohibited by the Constitution or the statute, and cases of express prohibition.

The court there said, on page 425: "Under our previous holdings it has been universally affirmed that contracts by municipal corporations which are either prohibited by statute, as in the case at bar, or which were in violation of public policy, could not result in creating an implied liability against such corporations. * * * A court, however, under the facts disclosed, must be controlled by the imperative demands of the law applicable thereto, and has no power to grant legal or equitable relief." See, also, as presenting analogies, *State, ex rel.,* v. *Goldthait* (1909), 172 Ind. 210, 87 N. E. 133, 19 Ann. Cas. 737; *Sandage* v. *Studebaker Bros. Mfg.Co.* (1895), 142 Ind. 148, 41 N. E. 380, 34 L. R. A. 363, 51 Am. St. 165; *Boyd* v. *Mill Creek School Tp.* (1890), 124 Ind. 193, 24 N. E. 661; *Johns* v. *Town of Sheridan* (1909), 44 Ind. App. 620, 89 N. E. 899; *First Nat. Bank* v. *Van Buren School Tp.* (1911), 47 Ind. App. 79, 93 N. E. 863; *Independent School District, ex rel.,* v. *Collins* (1908), 15 Idaho 535, 98 Pac. 857, 128 Am. St. 76; *McNay* v. *Town of Lowell* (1908), 41 Ind. App. 627, 84 N. E. 778; *Caldwell*

v. *Board, etc.* (1908), 41 Ind. App. 40, 83 N. E. 355; *Lincoln School Tp.* v. *American School Furniture Co.* (1903), 31 Ind. App. 405, 68 N. E. 301; *Peck-Williamson, etc., Co.* v. *Steen School Tp.* (1903), 30 Ind. App. 637, 66 N. E. 909; *City of Detroit* v. *Michigan Pav. Co.* (1877), 36 Mich, 335; *City of Detroit* v. *Robinson* (1878), 38 Mich. 108; *Floyd County* v. *Allen* (1910), 137 Ky. 575, 126 S. W. 124, 27 L. R. A. (N. S.) 1125; *Bechtel* v. *Fry* (1907), 217 Pa. St. 591, 66 Atl. 992; *McDonald's Admr.* v. *Franklin County* (1907), 30 Ky. Law 1245, 100 S. W. 861; *City of Winchester* v. *Frazer* (1897), 19 Ky. Law 1366, 43 S. W. 453; *Trustees, etc.,* v. *Hohn* (1884), 82 Ky. 1; *Chippewa Bridge Co.* v. *Durand* (1904), 122 Wis. 85, 99 N. W. 603, 106 Am. St. 931; *Snyder* v. *Boards, etc.* (1900), 10 N. M. 446, 62 Pac. 1090; *Crutchfield* v. *Warrensburg* (1888), 30 Mo. App. 456; *Mister* v. *City of Kansas* (1885), 18 Mo. App. 217; *West & Co.* v. *Berry* (1896), 98 Ga. 402, 25 S. E. 508.

Here we have a case of payment made in violation of an express statute, which fixes the status of all parties. The trustee can have no equities higher than he who furnishes material which is necessary and is used, and he is remediless, while the trustee, as it is held, may be relieved from the violation of the express law and his duty.

I am unable to comprehend the ground for, or the wisdom of such attempted distinction.

The judgment should be reversed, with instructions to sustain the demurrer to the complaint, and for further proceedings not inconsistent with this opinion.

Monks, J., concurs in this opinion.

NOTE.—Reported in 99 N. E. 102, 99 N. E. 111. See, also, under (1) 38 Cyc. 657; (2) 29 Cyc. 1448, 1463; (3) 36 Cyc. 1106; (4) 38 Cyc. 632; (5) 16 Cyc. 106, 107; (6) 29 Cyc. 1465; (7) 28 Cyc. 650; (8) 38 Cyc. 645; (9) 38 Cyc. 630, 632; (11) 1 Cyc. 737; (13) 38 Cyc. 645; (14) 38 Cyc. 637; (15) 38 Cyc. 638; (16) 38 Cyc. 658; (18) 29 Cyc. 1435; (19) 16 Cyc. 145; (22) 16 Cyc. 137; (23) 8 Cyc. 926. As to the acts for which sureties on official bonds are

liable, see 91 Am. St. 497. As to the liability of sureties on the bond of an officer after the expiration of his term of office, see 103 Am. St. 932. As to the liability of ministerial officers to private individuals for the nonperformance, or misperformance of official duties, see 95 Am. St. 72. As to the right of a taxpayer in absence of statute to enjoin unlawful expenditures by municipality, see 36 L. R. A. (N. S.) 1. As to the right of a taxpayer to maintain an action to recover money illegally paid out of the public treasury, see 19 Ann. Cas. 776.